The intervening defendant and appellee herein, the New York Central Railroad Company, lessee of the Michigan Central Railroad Company, filed a petition with the defendant, Michigan public service commission, for authorization to construct, maintain, and use a crossover at grade on the main line of the Detroit Toledo Shore Line Railroad Company, plaintiff and appellant herein. This petition was filed under the provisions of Act No. 171, Pub. Acts 1893 (2 Comp. Laws 1929, § 11414 et seq., 3 Comp. Laws 1948, §469.31 et seq. [Stat. Ann. § 22.781 et seq.]).
The Shore Line's double main tracks lie near the shore of the Detroit river and Lake Erie, over which about 5 through trains and 2 local trains are operated daily in each direction between Detroit and Toledo at a maximum speed of 50 miles per hour. The New York Central also operates over a double *Page 198 
track line parallel and contiguous to the Shore Line between Detroit and Toledo.
In 1901, the Toledo, Canada Southern Detroit Railway Company, predecessor in title to the Michigan Central Railroad Company, made an agreement with the Detroit Toledo Shore Line Railroad Company, wherein, among other things, the Shore Line Company granted the Toledo-Canada Company the right at any time to cross its lines with spur tracks between Trenton and Toledo, without cost or payment of compensation under certain conditions.
On June 24, 1947, Fay N. Pierce, director of the railroad division of the commission, sitting as an examiner, took the testimony, under oath, of witnesses presented by both railroad companies, which testimony was transcribed by a reporter and returned to the commission with a number of exhibits. During the taking of this testimony before the examiner, no objections were interposed to this procedure by either party.
On November 17, 1947, the commission entered an order granting permission to the New York Central "to cross at grade with a spur track extending in an easterly direction approximately to the Detroit river the tracks of the Detroit Toledo Shore Line Railroad Company, located in town 4 south, range 10 east, Brownstown township, Wayne county, Michigan, as shown on Michigan Central Railroad Plan No. M.C. 59-37, dated December 13, 1946, which plan is hereby approved and made a part of this order by reference." Certain safety provisions were incorporated in the order and the New York Central was required to bear all costs and expenses.
On December 15, 1947, the Shore Line Railroad filed a bill of complaint in the Ingham circuit court to vacate and set aside the order of the commission. The commission filed an answer and moved to dismiss on the ground, among others, that the order *Page 199 
was not an appealable one. The New York Central was granted leave to intervene and filed a separate answer.
On June 30, 1948, the court entered a decree affirming "the altered, modified and amended order" of the commission, except in certain particulars. The commission's motion to dismiss was denied. The Shore Line has appealed from the decree and the commission has taken a cross appeal from the denial of its motion to dismiss.
The Michigan public service commission was created by Act No. 3, Pub. Acts 1939 (3 Comp. Laws 1948, § 460.1 et seq. [Stat. Ann. 1947 Cum. Supp. § 22.13 (1) et seq.]), as the successor of the public utilities commission, and acquired all the rights, powers and duties vested in it. The act of 1939 made no change in the statute covering actions to vacate orders of the commission. Section 26 of the railroad commission act,* being 3 Comp. Laws 1929, § 11042 (3 Comp. Laws 1948, § 462.26 [Stat. Ann. § 22.45]), provides in part as follows:
"Sec. 26. (a) Any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within 30 days from the issuance of such order and notice thereof commence an action in the circuit court in chancery for the county of Ingham, against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable."
The public service commission argues that the trial court erred in denying its motion to dismiss *Page 200 
plaintiff's amended bill of complaint in that no appeal can be had from its orders, except as prescribed by statute, and since the order complained of does not "come within the language of section 26" or the provisions of any other statute, appellant's proper remedy is by certiorari.
The Shore Line insists that the quoted statute provides for a review of any affirmative order of the commission, citing as authority for its position, among others, Rapid Railway Co. v.Michigan Public Utilities Commission, 225 Mich. 425 (P.U.R. 1924B, 585); Sparta Foundry Co. v. Michigan Public UtilitiesCommission, 275 Mich. 562; and National Automobile TransportersAss'n v. Ingham Circuit Judge, 279 Mich. 394.
In the Rapid Railway Case this Court said:
"Section 26 (a) of the railroad commission act (2 Comp. Laws 1915, § 8134 [3 Comp. Laws 1948, § 462.26]) provides for the review of any order made by the commission by a bill in equity filed in the circuit court for the county of Ingham."
This statement was relied upon in the National AutomobileCase. It must be noted that the Court was speaking only with respect to the motor vehicle act.
In the Sparta Case, which involves reparations on railroad rates, in holding the order of the commission unappealable, we said:
"Being entirely a creature of statute, no appeal lies from the action of the commission except as prescribed by statute. * * * And this right of appeal cannot be extended to cases not within the statute. * * *
"Our attention is called to no statute which specifically authorizes the appeal attempted by plaintiff to the circuit court for Ingham county, in chancery. It is contended, however, that viewing the statutes creating the Michigan public utilities commission and prescribing its powers and duties as a whole, it *Page 201 
is apparent an appeal from all the orders of the commission was intended to be granted. The apparent object and purpose of these statutes was to create a special administrative tribunal to which was committed the determination of questions within the purview of these statutes, which determination should be final and conclusive except in those cases where the right of appeal was granted by statute."
Mr. Justice POTTER, speaking for the Court in that case, also said:
"Any common carrier or any other party in interest may appeal from an affirmative order of the commission. * * * The order here is a denial of reparation. * * * It is negative in character and is not one which may be appealed from."
While the principle "expression unius est exclusio alterius"
might point toward the conclusion that no appeal lies from the order herein involved, nevertheless under the authorities hereinbefore cited we are constrained to hold that an appeal from an order, such as the one here in question, is permissible.
The Shore Line contends that it was unlawful and unreasonable for the commission to authorize the New York Central "to construct over the main lines of appellant railroad an inherently hazardous crossing at grade which had been proved completely unnecessary."
Act No. 198, § 28, Pub. Acts 1873, as amended (3 Comp. Laws 1948, § 464.28 [Stat. Ann. § 22.232]), provides in part:
"Any company organized under this act may build such spur tracks or branches as may be found necessary to develop business along its line of road, as the board of directors may judge to be expedient."
The record shows that the territory sought to be reached by the New York Central is presently undeveloped. We find no provision in this act or in *Page 202 
the one regulating construction of crossover tracks of railroads which require the commission to concern itself in this particular with questions of public convenience and necessity.
There is testimony to show that the diamond crossing, as authorized here, is the one most commonly used and that the safety factors imposed by the commission and the court are considered by technical experts, who testified in the case, to be appropriate protection for such crossings. As was said in Altou Southern Railroad v. Vandalia Railroad Co., 268 Ill. 68, 82
(108 N.E. 800):
"The necessity and practicability of grade crossings have been demonstrated by experience. They are found everywhere * * * [and] are operated with reasonable safety and rapidity. * * * We think the deduction can be fairly drawn from the evidence that grade crossings, properly protected by up-to-date interlocking devices and properly guarded and regulated, are considered by experienced railroad men as reasonably safe and reliable."
It is elementary that a grade crossing, no matter how carefully planned, constructed and operated, cannot be as safe as no grade crossing at all, but the dangers that do inhere do not require the commission, in the exercise of its sound discretion, to deny authorization of such crossing if the management of the petitioning railroad feels that something is to be gained by present construction, and if the commission determines, as it did here, that by the methods proposed the crossing will be reasonably safe.
The Shore Line further contends that it was unlawful for the commission "to delegate to an examiner the power to hold hearing upon the application to construct such crossing, and to do so in the absence of any member of the commission." *Page 203 
As stated above, the evidence produced before the examiner was submitted under oath, interested parties were represented by counsel, and the testimony and exhibits were then returned to the commission, which passed upon the matter. It does not appear that any objection was made before the commission to the methods thus employed. This question was raised for the first time in the circuit court, which held that the contention was "without force and effect, and that, for failure to make timely objection thereto, plaintiff is now clearly estopped and precluded from objecting thereto." Neither the railroad commission act (3 Comp. Laws 1929, § 11018 et seq.; 3 Comp. Laws 1948, § 462.2 etseq. [Stat. Ann. § 22.21 et seq.]), nor the public service commission act (3 Comp. Laws 1948, § 460.1 et seq. [Stat. Ann. § 22.13 (1) et seq.]), specifically requires that the commission or any of its members must themselves hold hearings; nor do the statutes expressly authorize the commission to empower others to hold hearings. Final action, however, can only be had by the commission or one of its members when so directed by the commission, and thereafter "any interested party shall be entitled to a rehearing before the full commission upon request," et cetera. In the instant case no such rehearing was sought.
In Great Northern Railway Company v. Department of PublicWorks, 137 Wn. 548 (242 P. 1092), a truck operator applied for an extension of service. Several railroads opposed the application. All the parties appeared at a hearing before a special examiner designated by the department of public works. On appeal appellants objected to the hearing before the examiner on the ground that he was without power in the premises. Appellants had raised no objection to this procedure at the hearing before the department or in the superior court. In disposing of the case, the court said: *Page 204 
"If it be assumed, as the appellants argue, that the examiner had no power to conduct or preside at the taking of evidence, such irregularity does not go to the jurisdiction of the department of public works, in the sense contended for by the appellants. The application for an extension of service under certificate No. 267 was made and filed with the department. The testimony given before the examiner, taken down by a reporter, was reported back to the department, before which the interested parties were heard upon that record without any objection as to the manner of taking testimony. It was the department, and not the examiner, that decided the matter. It made and entered the findings and order complained of. It was upon that same record, when it reached the superior court, that, without any objection as to the form or manner of taking the testimony, the respective parties were heard concerning the findings and order under review.
"The thing complained of — that is, the taking of testimony by an examiner rather than by a member of the department — if we assume the examiner had no power, does not go to the jurisdiction of either the department of public works or the superior court, but it is simply a case of admitting evidence, claimed by appellants to have been improperly taken, upon which the cause was decided, which cannot be reviewed, because, at the time it was taken or was considered by either the department of public works or the superior court, there was no objection to it nor any motion to strike it out." Citing Keil v. Grays Harbor PugetSound R. Co., 71 Wn. 163 (127 P. 1113).
Similarly, we conclude that appellant must be deemed to have waived its objection to the procedure employed in the instant case.
The decree is affirmed, with costs to appellee.
SHARPE, C.J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.
* Act No. 300, Pub. Acts 1909. — REPORTER. *Page 205