HOBSON, Justice.
L. M. Robertson and Irvin Smart, d/b/a Robertson Transportation Company, made application on the 28th day of July, 1953, to the Florida Railroad and Public Utilities Commission for a certificate of public convenience and necessity to operate an auto transportation company as a private contract carrier of liquefied petroleum gas from, to and between points and places within a 175 mile radius of Tampa, Florida, under contract with Warren Petroleum Corporation. Petitioners unsuccessfully protested the granting of the certificate for which application was made under date of December 1, 1953. The Commission granted a certificate of public convenience and necessity consonant with the application which had been made by Robertson Transportation Company.
Petitioners propose two questions for our consideration and determination. We find it unnecessary to discuss the second of these questions because we have reached the conclusion that the question hereinafter set forth should be answered in the negative. This question as propounded by petitioners is:
“Where four common carriers have state-wide authority to render service on a particular product, can the Commission issue a contract carrier permit to a new carrier to serve a new shipper in a territory from which the product” had not previously moved, without first granting the existing carriers an opportunity to render the service?”
The determination of the question now ■before us hinges upon the proper construction to be given a portion of Section 323.-04(3), F.S.A. We quote the pertinent part of said statute:
“When application is made by an auto transportation company for a certificate to operate as a private contract carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission.”
Counsel for petitioners contend it was the clear intention of the legislature that existing certificate holders, in a situation such as the one depicted by the record in this cause, should be given an opportunity to provide service and facilities which may reasonably be required by the Commission before that body grants a new certificate to another carrier. The Commission disposed of the statute in the following language:
*418 “Applying this provision to the present application, there is no existing certificate holder, or holders, who are presently serving the territory included in this application, because there has heretofore been no demand for such service. Applicants already have on hand the necessary facilities and the trained and experienced personnel to engage in this operation as soon as Warren Petroleum Corporation is ready to commence distribution of this particular product. Under these circumstances public convenience and necessity justifies the granting of this application.”
In their brief counsel for Robertson Transportation 'Company endeavor to support the Commission’s ruling and cite our opinion in Great Southern Trucking Co. v. Mack, Fla., 1951, 54 So.2d 153, and Jack’s Cookie Co. v. Florida R. R. and Public Utilities Commission, Fla., 1951, 54 So.2d 695, which cases they believe inferentially at least support their position that existing carriers need not be given an opportunity to provide the necessary facilities or to improve their service before a new certificate of public convenience and necessity may be issued to another. Counsel confess that the rule in other states, as the brief of counsel for petitioner points out, is contrary, but insist that this rule rests upon statutes materially different from the Florida statute. They discuss and attempt to distinguish the following cases: Arizona Corporation Commission v. Hopkins, 52 Ariz. 174, 79 P.2d 946; Betts v. Roberts, 63 Ariz. 337, 162 P.2d 423; Atlantic Greyhound Corporation v. Public Service Commission, 132 W.Va. 650, 54 S.E.2d 169; Dixie Greyhound Lines v. American Buslines, 209 Miss. 874, 48 So.2d 584; Southern Bus Lines v. Mississippi Public Service Commission, 210 Miss. 606, 50 So.2d 149; and Virginia Stage Lines v. Commonwealth, 185 Va. 390, 38 S.E.2d 576.
It is true as contended by counsel for Robertson Transportation Company and by counsel for respondents that the statutes in the several states wherein the foregoing cases were heard and determined differ in language from our statute. Instead of using the words “fail to provide” the Arizona statute contains the words “will not provide”. A.C.A.1939, § 66-506. The Mississippi statute, however, has no provision similar to our own, the only relevant language being that which requires the Commission, in determining whether a certificate should be granted, to “give due consideration to the present transportation facilities over the proposed route of the applicant * * * ”, Mississippi Code 1942, § 764-2, and it will readily be seen that the Florida statute is much stronger in its protection of existing certificate holders. The Virginia statute provides in part: “No certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved * * * that the service rendered by such certificate holder * * * is inadequate * * * and * * * such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate over such route.” Code of Virginia 1950, § 56-281.
Thus although some of the statutory language above alluded to is more positive and some less positive than our own, the construction given it by the courts universally requires consideration to be given existing certificate holders. While our statute may be susceptible of the construction which the Commission evidently placed upon it and which counsel for Robertson Transportation Company, as well as counsel for the Commission, insist should be given thereto, we are persuaded to the view that such construction is not sufficiently comprehensive. It places a strained, restrictive interpretation upon the statutory language “in a territory or on a line already served by a certificate holder” which interpretation is antithetical to the real purpose and intent thereof.
The statutory objectives, including the evils intended to be avoided, have heretofore been outlined by this court. See Great Southern Trucking Co. v. Mack, supra, and Jack’s Cookie Co. v. Florida Rail *419 road and Public Utilities Commission, supra. For the sake of clarity we repeat that it i? not the policy of the law to encourage monopolies, but it is its policy to protect within reasonable limits, so far as is consistent with the public interest, the franchise of each existing certificated carrier, as well as to prevent unnecessary congestion of traffic and additional wear and tear upon the highways (although the latter objectives are not involved in this case).
We do not consider our opinion in Great Southern Trucking Co. v. Mack, supra, authority for a contrary view and, indeed, we not only do not agree that our decision in Jack’s Cookie Co. v. Florida Railroad and Public Utilities Commission, supra, is authority for the construction apparently placed upon our statute by the Commission, and for which applicant contends, but, on the contrary, in that very case we stated [54 So.2d 698]: “We think that it is rather far-fetched to suggest that if the existing carriers do not, or will not, equip their trucks properly to handle the product of Weathermaster, Inc., the manufacturer should go out of business in the area served by them.” (Italics supplied.) We further made the observation therein that: “It is crystal clear from the commission’s findings that the petitioner has offered the equipment necessary safely to transport the blinds and that no other company has done so or been required to do so.” (Italics supplied.)
It might be contended that in the latter case it was unnecessary to decide whether our statute requires an opportunity to be given existing certificate holders to provide service and facilities which may reasonably be required by the Commission before granting a new certificate to an applicant and that our statements therein, emphasized in the foregoing quotations, were obiter dicta. Our decision turned, however, largely, if not entirely, upon the premise that existing certificate holders had failed, after opportunity existed, to provide a safe method of transportation, which was determined to be a reasonable requirement.
In the Jack’s Cookie Co. case we reversed the Commission’s order denying the application of Jack’s Cookie Company for a certificate of public convenience and necessity, but in that case it was made clearly to appear that the existing certificate holders not only were not adequately equipped properly to handle the jalousies manufactured by Weathermaster, Inc., but had, in effect, refused to equip themselves to transport the jalousies without probable damage to the product or prohibitive expense to the manufacturer. The manufacturer entered into contract with Jack’s Cookie Company because no other safe method of transportation was available. Moreover, in our opinion, we pointedly observed that it appeared that originally no attempt had been made by the manufacturer “to avoid patronizing the established carriers or to create competition to them * jfc »
In this case we have an entirely different situation. The certificate holders, petitioners herein, attempted to secure information from Warren Petroleum Corporation well in advance of Warren’s proposed operations in order to secure the equipment and trained personnel for the safe and adequate handling of liquefied petroleum gas. In response, Warren Petroleum Corporation gave petitioners no satisfaction and, in fact, misled them, because after entering into the contract with Robertson Transportation Company Warren wrote to one of the petitioners, Florida Tank Lines, that: “Our plans for movement of LPG from the Tampa terminal have not been finalized.”
It may be that Warren Petroleum Corporation was not required to furnish information sought by the petitioners in order that they might adequately prepare themselves to handle Warren’s prospective business. It certainly cannot, however, be considered fair dealing or consonant with the statutory purpose of avoiding certain evils for a prospective shipper not only to fail to give to existing certificate holders the information which had been sought by them, but actually to make a misrepresentation to said certificate holders, obviously, if not *420 admittedly, in line with a pre-conceived scheme. This scheme was to have a carrier with whom they had previously experienced favorable business relations in another state granted a certificate of public convenience and necessity in Florida for the express purpose of transporting liquefied petroleum gas for Warren, after the latter should complete the terminal facilities in Tampa.
The Commission found, and we must unquestionably agree, that because “there has heretofore been no demand for such service” no existing certificate holder is “presently serving the territory included in this [Robertson] application” and that “applicants already have on hand the necessary facilities and the trained and experienced personnel to engage in this operation as soon as Warren Petroleum Corporation is ready to commence distribution of this particular product”. We do not agree, however, that from such findings- it necessarily follows that public convenience and necessity require or justify the granting of the application here under consideration.
We are not unmindful of the “competent, substantial evidence” rule as laid down in United States Casualty Company v. Maryland Casualty Company, Fla., 55 So.2d 741, 745 and Town of Crescent City v. Green, Fla., 59 So.2d 1, but the instant case is not one where findings of fact are in dispute. Instead, we view it as one wherein the Commission has departed from the essential requirements of the law, as applied to the undisputed facts of the case.
 It is our conclusion that as suggested, if not decided, in our opinion in Jack’s Cookie Co. v. Florida Railroad and Public Utilities Commission, supra, it is the intent of our statute to give existing carriers a reasonable opportunity to provide equipment and, if necessary, trained personnel, before the Commission grants a new certificate to another carrier. No such opportunity, though contemplated by the Florida statute, was afforded petitioners herein. Moreover, petitioners did not apathetically sit by in reliance upon the statutory provision but, on the contrary, actively, albeit unsuccessfully, sought an opportunity to avoid the situation, created by the conduct of Warren, which finally formed the basis for the Commission’s ruling. Had petitioners’ failure to prepare their equipment and secure trained personnel for the reasonably required service been attributable to their own dereliction rather than to the admitted desire, and obviously pre-conceived scheme, of Warren, or had petitioners, after opportunity had been accorded them to do so, refused to furnish necessary equipment and trained personnel, we would probably concur in the conclusion reached by the Commission, but such was not the case. We cannot be led to the view that the exigency, which at the time of the hearing before the Commission was found to exist and which formed the basis for its ruling, developed fortuitously or by virtue of any dereliction, neglect or indifference, amounting to a failure to provide adequate facilities, on the part of petitioners. It arose as a direct result of Warren’s deliberate course of conduct, to which Robertson Transportation Company at least subscribed, if, indeed, it was not.an active participant therein.
The petition for the writ of certiorari is granted and the challenged order of the Florida Railroad and Public Utilities Commission is hereby quashed.
ROBERTS, C. J., and THOMAS and DREW, JJ., concur.