80 So.2d 322 (1954)
TAMIAMI TRAIL TOURS, Inc., Central Truck Lines, Inc., Great Southern Trucking Company, and Overseas Transportation Company, Petitioners,
v.
Jerry W. CARTER, Richard A. Mack, and Wilbur C. King, as and constituting the Florida Railroad and Public Utilities Commission, Respondents.
Supreme Court of Florida. En Banc.
October 26, 1954.
On Rehearing February 11, 1955.
Rehearing Denied March 14, 1955.
*323 A. Pickens Coles, Tampa, for petitioners.
Lewis W. Petteway and Guyte P. McCord, Tallahassee, for Florida Railroad and Public Utilities Commission.
Robert L. Floyd and Yonge, Whiteside & Prunty, Miami, for applicants, respondents.
DREW, Justice.
Martin and Evelyn Rokaw, doing business as Beverage Transport Company, filed their application for a certificate of public convenience and necessity on November 6, 1952. The certificate sought from the respondent Commission would authorize them to transport over the public highways of the affected area alcoholic liquors and wine from wholesale outlets in the City of Miami, Florida, to retail outlets in twelve counties lying northerly therefrom.
Without objection from any interested party, the application was referred to an examiner, Alfred E. Sapp, of Miami, for the purpose of conducting hearings thereon and recommending to the Commission the proper disposition thereof. Hearings were conducted by the examiner, at none of which was there any objection to his authority to conduct such hearings and at which appeared the petitioners here, Tamiami Trail Tours, Inc., Central Truck Lines, Inc., Great Southern Trucking Company and Overseas Transportation Company, who had theretofore appeared in the proceedings as protestants. Each of the petitioners held certificates as general commodity common carriers operating over regular routes and on regular schedules in the area sought to be served by the applicants Martin and Evelyn Rokaw to the limited extent set forth in their application.
About three and a half months after the application was filed, the examiner filed his report and recommended an order that the application be denied. On application, the Commission reopened the cause and ordered further hearings which were conducted by the examiner, again without objection from any interested party. Some months later the second report of the examiner was filed and he again recommended that the application be denied. To these recommendations the applicants excepted, the matter was duly considered by the Full Commission and, upon consideration thereof, it overruled the recommendations of the examiner, made its own findings of fact, and granted the application. Rehearing was applied for, further arguments were held and the petition for rehearing was overruled. The protesting carriers, petitioners here, in due course filed their petition to this Court for certiorari.
The principal question presented for our consideration is whether the Commission departed from the essential requirements of law in granting the application.
The Legislature has provided for the regulation of common and private contract carriers on the highways of this State by the Florida Railroad and Public Utilities Commission. Section 350.12(2) (m), Florida Statutes, 1953, F.S.A., provides:
"Every * * * order * * * made by the commissioners shall be deemed and held to be * * * reasonable and just and such as ought to have been made in the premises * * * unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and *324 shall not be set aside or held invalid unless the contrary so appears. All presumptions shall be in favor of every action of the commissioners and all doubts as to their jurisdiction and powers shall be resolved in their favor, it being intended that the laws relative to the railroad commissioners shall be deemed remedial laws to be construed liberally to further the legislative intent to regulate and control public carriers in the public interest. * * *"
We have long since held that the above-quoted section of the Statute applies to orders of the Commission regulating automobile transportation under Chapter 323, Florida Statutes, 1953, F.S.A., as well as other orders of the Commission. See Central Truck Lines v. Railroad Commission, 118 Fla. 526, 160 So. 22; In re Edwards, 100 Fla. 989, 130 So. 615; Florida Motor Lines v. Railroad Commission, 101 Fla. 1018, 132 So. 851; and Atlantic Coast Line R. Co. v. Railroad Commission, 149 Fla. 245, 5 So.2d 708.
Not only do orders of the Commission entered by it pursuant to and within the powers given it under the laws of this State have the presumption of validity mentioned in the foregoing Statute, but the rule is elementary that in certiorari proceedings to review orders of that Commission, the burden is upon the petitioner to show that the order complained of was illegal or unauthorized or, in the entry thereof, the Commission departed from the essential requirements of the law or that it exceeded its jurisdiction.
Under the authority of Section 35 of Article 5 of the Florida Constitution, F.S.A., the Legislature has clothed the Railroad Commission with judicial powers in matters which are connected with the function of its office. It is only in those instances, as we have said on many previous occasions, where it is made clearly to appear to us that the Commission has done an illegal or unauthorized act, has exceeded its jurisdiction or failed to accord with the essential requirements of the law, that we are authorized to interfere with its actions. It is indeed a narrow corridor through which the petitioner must pass and we should be most circumspect not to transgress its limitations. Proper restraint in this connection on the part of this Court clearly preserves the true historical purpose of the Courts and leaves the Commission the power effectively to function within its limited field of operation under the Constitution and Statutes.
We have assiduously searched the record here and have failed to find that in this case the Railroad Commission either exceeded its jurisdiction or failed to observe the essential requirements of the law in the issuance of the challenged order or that such order is in any respect illegal or unauthorized. It is not our function to examine and weigh the evidence in detail. In Nelson v. State ex rel. Quigg, 156 Fla. 189, 23 So.2d 136, we said, and now repeat:
"We have held, and it seems to be an almost universal rule, that the findings of fact made by an administrative board, bureau, or commission, in compliance with law, will not be disturbed on appeal if such findings are sustained by substantial evidence. Hammond v. Curry, 153 Fla. 245, 14 So.2d 390; Jenkins v. Curry, [154 Fla. 617] 18 So.2d 521; Callahan v. Curry, 153 Fla. 744, 15 So.2d 668; Marshall v. Pletz, 317 U.S. 383, 63 S.Ct. 284, 87 L.Ed. 348; Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568. The underlying and salient reasons for this safe and sane rule need not be repeated here. The fact that it is not the province of an appellate court to try cases de novo on a cold typed transcript is too elementary to require emphasis. This rule finds its counterpart in, if indeed it is not the twin brother of, the rule which requires an appellate court to give great weight to the findings of fact made by a jury or a chancellor and to sustain such findings unless there is no substantial evidence to support them. See Broxson v. State, 99 Fla. 1187, 128 So. 628; Smith v. *325 Midcoast Inv. Co., 127 Fla. 455, 173 So. 348; Marcus v. Hull, 142 Fla. 306, 195 So. 170.
"The rule invoked herein is salutary and founded in good common sense and irrefutable logic. It should be adhered to religiously. The advent of the talking moving picture probably has given us a preview of a sound reason for its ultimate abolition. However, until this possible avenue of escape has been made adaptable to, and a requirement in, judicial proceedings, the rule should remain inviolate."
The responsibility is upon the petitioners here to make it clearly appear to us that the challenged order is so defective in one of the aspects hereinbefore named as to bring into operation the powers of this Court to vacate it. No such showing has been made. Moreover, there can be no question but that whatever harm may be suffered by protestants in granting the permit is so inconsequential when arrayed alongside the obvious benefits which will be received by the various public interests affected, as to support clearly the conclusions reached by the Commission in the exercise of the discretion vested in it under the law.
The petitioners' contention that subsection (3), of Section 323.03, Florida Statutes, 1951, F.S.A., precludes the issuance of the challenged certificate as a matter of law, has been answered contrary to their contention in the case of Jack's Cookie Co. v. Florida Railroad & Public Utilities Commission, Fla. 1951, 54 So.2d 695, 698. That case presented a proposition almost identical to the one we are concerned with here, and there, in reference to section 323.04(3), F.S. 1951, F.S.A., which is identical in substance to section 323.03(3), supra, we held the Statute: "clearly implies that there may be circumstances where a particular service is not afforded by established carriers and where to meet the need the commission can authorize the transportation offered by another."
Following that line of reasoning, the record here shows, and it is not questioned by petitioners, that the carriers who handled the bulk of the subject business during the period of the late war were now and for a long time had been handling only about one per cent thereof. The fact that the common carriers, the protestants here, are handling only this minute percentage of this potential business is the most forceful argument that it had not furnished the service and facilities reasonably required as contemplated by the Statutes. We can think of no higher or better evidence to establish the fact that, so far as this limited field of transportation is concerned, the public convenience and necessity had not been served by the protesting carriers and we think they have had ample time and opportunity to do so. The protesting carriers have failed, for one reason or another, to take advantage of the opportunity they have had over a long period of years to furnish the type of service which from this record is apparently needed, desirable, necessary and in the interest of the general welfare. Under such circumstances, the protesting carriers are not protected by section 323.03(3), supra, and it did not constitute any departure from the essential requirements of the law to grant the permit to the applicants. See Great Southern Trucking Co. v. Mack, Fla. 1951, 54 So.2d 153.
This case is to be distinguished on the facts from Redwing Carriers, Inc., v. Mack, Fla., 73 So.2d 416, 420. The fact presented there did not show that the existing certificate holders had rendered poor, inadequate and unsatisfactory service over a long period of time as was the case in Great Southern Trucking Co. v. Mack, supra, nor did the facts show that the certificate holders had failed to furnish equipment needed for the transportation of a special product requiring special equipment although they had had ample opportunity to do so as was the situation in Jack's Cookie Co. v. Florida Railroad & Public Utilities Commission, supra. In the Redwing case it was undisputed that the protesting carriers had never had the opportunity to provide the service to transport the product there involved. Under such circumstances, we held that "it *326 is the intent of our statute to give existing carriers a reasonable opportunity to provide equipment and, if necessary, trained personnel, before the Commission grants a new certificate to another carrier." It was because in that case no such opportunity had been afforded to the then existing certificate holders, that we declared the action of the Commission in granting the permit to be a violation of the existing carriers' right under the statute and therefore a departure from the essential requirements of law.
We now direct our attention to the proposition urged by petitioners that the Railroad Commission was without authority to appoint an examiner to conduct these proceedings. We have already noted that, until this case reached this Court, this question was never raised. In all of the proceedings below, including those before the Full Commission as well as the examiner, the petitioners were content to proceed on the apparent assumption that the examiner was authorized to act.
In the case of Great Northern Ry. Co. v. Department of Public Works of Washington, 137 Wash. 548, 242 P. 1092, an almost identical proposition was presented on review of an order of the Department of Public Works of Washington granting a certificate of convenience and necessity. In disposing of this contention, the Supreme Court of Washington made the following observations which are most appropriate to the matter now before us:
"The first contention on behalf of the appellants is that at the time and place fixed for the hearing and taking of testimony neither the director nor any other member of the department of public works was in attendance; that the special examiner who conducted the hearing was without power in the premises; and that, there being nothing more in the nature of testimony in support of the application, the order made by the department is void. In reply to the argument on behalf of the respondents that no objection was raised either at the time the testimony was taken before the special examiner, at the subsequent consideration of the matter before the department, or in the superior court it is submitted on behalf of the appellants that it is a question of jurisdiction which, under section 263, Rem.Comp.Stat., can be raised in this court for the first time. If it be assumed, as appellants argue, that the examiner had no power to conduct or preside at the taking of evidence, such irregularity does not go to the jurisdiction of the department of public works in the sense contended for by the appellants. The application for an extension of service under certificate No. 267 was made and filed with the department. The testimony given before the examiner, taken down by a reporter, was reported back to the department before which the interested parties were heard upon that record without any objection as to the manner of taking testimony. It was the department and not the examiner that decided the matter. It made and entered the findings and order complained of. It was upon that same record when it reached the superior court that without any objection as to the form or manner of taking the testimony the respective parties were heard concerning the findings and order under review. The thing complained of, that is, the taking of testimony by an examiner rather than by a member of the department, if we assume the examiner had no power, does not go to the jurisdiction of either the department of public works or the superior court, but it is simply a case of admitting evidence, claimed by appellants to have been improperly taken, upon which the cause was decided, which cannot be reviewed, because at the time it was taken or was considered by either the department of public works or the superior court there was no objection to it nor any motion to strike it out. Keil v. Grays Harbor & Puget Sound R. Co., 71 Wash. 163, 127 P. 1113."
*327 The foregoing case was decided in 1926. Twenty-three years later this case was followed and quoted from at length by the Supreme Court of Michigan in disposing of a very similar contention. Detroit & Toledo Shore Line R. Co. v. Michigan Public Service Comm., 324 Mich. 195, 36 N.W.2d 896. It is interesting to note that both the Washington and Michigan Statutes under consideration in those cases were very similar in many respects, so far as the present question is concerned, to our own. We think both the Washington and Michigan Courts correctly disposed of the proposition and we hereby adopt the reasoning in those cases as our own.
We find no substance in the proposition urged by petitioners that, assuming the examiner to be properly appointed  the Railroad Commission was without power to overrule his findings of fact where supported by substantial evidence in the record. The petitioners' reasoning in this respect is based upon the false assumption that the examiner is vested with the power under the law to make findings of fact. It is true that under the present workmen's compensation laws of this State we hold that the Full Commission may not overrule the findings of the Deputy Commissioner on questions of fact if there is substantial evidence to support such findings. In this connection, however, the law itself makes the Deputy Commissioner the trier of the facts and we very carefully pointed this out in United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741. We held in that case that so far as factual matters were concerned, the Full Commission functioned as an appellate body rather than as a fact finding body, subsequent to the 1941 amendment which vested the fact finding power in Deputy Commissioners. Such is not the case so far as the Railroad Commission is concerned. The Commission, and only the Commission, is the trier of the facts. Our Constitution authorized the Legislature to clothe the Railroad Commission "with judicial powers in all matters connected with the function of their office." Article 5, Section 35, Florida Constitution. It is only the Railroad Commission which may exercise the sovereign power vested in it. It may not delegate the exercise of sovereign power to any of its employees. Florida Dry Cleaning & Laundry Board v. Economy Cash & Carry Cleaners, Inc., 143 Fla. 859, 197 So. 550. It is contemplated by our Constitution that such sovereign power and governmental authority which, as here, involves the exercise of discretion and responsibility in its highest form, shall and must be performed by persons elected by the people or appointed by the Governor. McSween v. State Live Stock Sanitary Board of Florida, 97 Fla. 750, 122 So. 239, 247, 65 A.L.R. 508, 522.
In the instant case, the Railroad Commission, without objection from any interested party, authorized the hearings to be conducted and testimony to be taken by its employee denominated an examiner. The testimony was reduced to writing and, while the record shows that such examiner filed with the Commission a recommended order, it is abundantly clear from the record, and the petitioners so concede, that the ultimate order issued was based on facts determined by the Railroad Commission and not the examiner.
The decisions, such as Harmon v. Harmon, Fla. 1949, 40 So.2d 209, dealing with the weight to be accorded findings of masters in chancery are wholly inapplicable to the question here presented.
With particular reference to proceedings before administrative agencies, we consider it pertinent to observe that objections to proceedings should be made while such agencies have an opportunity to correct such proceedings in order that such question may be reviewed by the courts. United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54.
We wish to emphasize that this record does not present for our consideration the question of whether the Commission has the authority to authorize an examiner or one other than the Commission or a member thereof to conduct hearings where timely *328 objection is made to such procedure. We specifically do not determine that question.
Certiorari is denied.
ROBERTS, C.J., and TERRELL, HOBSON and MATHEWS, JJ., concur.
THOMAS, J., dissents.
SEBRING, J., not participating.

On Rehearing
MATHEWS, Chief Justice.
In this case the respondents granted a new certificate of public convenience and necessity to the applicants to perform "a personalized liquor and wine delivery service for all of the wholesale distributors in the Miami area", over routes now being served by the petitioners, the protesting common carriers.
We agree with the statement in the original opinion by Mr. Justice DREW that the principal question presented for our consideration is whether the Commission departed from the essential requirements of law in granting the application.
In the petition for rehearing it is pointed out that the Court overlooked the mandatory provisions of subsection (3) of F.S. § 323.03, F.S.A., as heretofore construed by this Court in the cases of Jack's Cookie Co. v. Florida Railroad & Public Utilities Commission, Fla., 54 So.2d 695, and Redwing Carriers, Inc., v. Mack, Fla., 73 So.2d 416, 420.
In overlooking the mandatory provisions of subsection (3) of F.S. § 323.03, F.S.A., as heretofore construed by this Court, an inconsistency will exist between opinions of this Court construing the same statute. The latest opinion construing subsection (3) of F.S. § 323.03, F.S.A. was that by Mr. Justice Hobson in the case of Redwing Carriers, Inc., v. Mack, supra, in which this Court said:
"It is our conclusion that as suggested, if not decided, in our opinion in Jack's Cookie Co. v. Florida Railroad & Public Utilities Commission, supra, it is the intent of our statute to give existing carriers a reasonable opportunity to provide equipment and, if necessary, trained personnel, before the Commission grants a new certificate to another carrier. * * *" (Emphasis supplied.)
This proceeding presents for review all of the provisions of F.S. § 323.03, F.S.A., having any relationship to the question involved.
The original application for a certificate of public convenience and necessity must contain the proposed time schedule, subsection (1) (d) of F.S. § 323.03, F.S.A.F.S. § 323.08, F.S.A. requires every certificate holder to maintain on file with the Commission a time schedule and authorizes the Commission to prescribe reasonable time schedules and then provides: "No * * * time schedules filed with the commission shall be changed by any such auto transportation company without an order of the commission sanctioning the same." F.S. § 323.09, F.S.A., authorizes the revocation of certificates in cases of violations of statutes. The Commission has the rule-making power and pursuant to such power, has prescribed rules and regulations on the transportation of freight. Rule 16 requires each common carrier to file time tables with the Commission, to adhere to such time tables and provides for the cancellation of certificates for the failure of the carrier to do so. Rule 17 requires schedules to be adhered to and then provides: "No schedule shall be changed nor additional schedule operated without the approval of the Commission upon application made therefor".
Prior to the hearing in this case, time schedules and time tables were on file. No authority had been granted by the respondents to the petitioners to change the time schedule or the time tables and had the petitioners, without such authority, changed *329 such schedules or time tables, the certificates of the petitioners would have been subject to revocation. In order to render the specialized service requested by the shippers and now ordered by the Commission, it would have been necessary for the petitioners to violate the schedules and time tables "without the approval of the Commission upon an application made therefor".
It can hardly be said that unless the petitioners violate the law it has failed to provide service and facilities "which may reasonably be required by the Commission".
On May 25, 1954, the date the opinion in the case of Redwing Carriers, Inc., v. Mack, supra, was handed down, subsection (3) of F.S. § 323.03, F.S.A., limited the jurisdiction of the respondents to the granting of a new permit on a line already served by certificate holder only when the certificate holder, or holders, serving such territory failed to provide service and facilities which may reasonably be required by the Commission. It is now sought to have an inconsistent opinion whereby a new certificate may be granted for personalized service desired by particular shippers of alcoholic beverages with new schedules and new time tables when there had been no prior determination by the respondents that such new service and facilities was reasonably required by the respondents.
We have heretofore stated in the Redwing Carriers case, supra, that it is the "intent of our statute [F.S. § 323.03(3), F.S.A.] to give existing carriers a reasonable opportunity to provide equipment and, if necessary, trained personnel, before the Commission grants a new certificate to another carrier." After having made the above solemn pronouncement, it would be inconsistent and unreasonable for us to now hold that it was within the jurisdiction of the Commission to grant a new certificate to a new carrier over a route now being served by existing common carriers and holders of certificates without giving them a reasonable opportunity to provide equipment and, if necessary, trained personnel, before the Commission grants such new certificate.
It appears from this record that some of the wholesalers desire a personalized service as to liquor and wine deliveries and that the applicant is seeking to establish a business satisfactory to the wholesalers for such personalized service and with reduced rates. This personalized service as to liquor and wines may include a door-to-door delivery service. The statute in question contemplates that the service shall be that "required by the commission." Wholesalers and retailers may desire a personalized service but the respondents have not required such service by the petitioners, the existing carriers, and the respondents have given no notice to such existing carriers that the Commission requires such personalized service and has not given to the petitioners any opportunity whatsoever to provide equipment and, if necessary, trained personnel, to render such personalized service. There is no showing of any kind that petitioners have failed to provide for any service and facility which was reasonably required by the Commission for the delivery of liquors and wines. It appears that the order granting a new permit to a new carrier over the territory in question is a departure from the essential requirements of the law.
The petition for certiorari should be, and the same is hereby granted, and the order complained of should be, and the same is hereby quashed.
TERRELL, THOMAS, SEBRING and ROBERTS, JJ., concur.
DREW, J., dissents and adheres to original opinion.
HOBSON, J., dissents and adheres to original opinion of DREW, J.