HOPPING, Justice.
In 1967, the railroad industry petitioned the Interstate Commerce Commerce for approval of various increases in their freight rates applicable on traffic moving in interstate commerce throughout the United States. In Docket Ex Parte 256, the Interstate Commerce Commission approved a general railroad freight rate in *564 crease for traffic in interstate commerce, including rate increases on the shipment of phosphate rock and phosphatic sand. Thereafter the Southern Freight Association in behalf of the railroads operating in Florida, requested that the Florida Public Service Commission approve similar increases in the freight rates the railroads could charge for the intrastate shipment of materials. The Florida Public Service Commission, after a hearing, granted the intrastate rate increases requested by the railroads by its Order #4324 dated February 23, 1968. It is to this Order that the instant petition for writ of certiorari is directed.
Before reviewing the petitioner’s contentions, it is proper to note that orders of the Florida Public Service Commission come before this Court clothed with a statutory presumption that they have been made within the Commission’s power and jurisdiction; that they are reasonable and just and that they are such as ought to have been made. Section 350.12(2) (m), Fla.Stat., F.S.A. This statutory presumption also provides that such orders shall not be set aside or held invalid unless their illegality plainly appears on the face of the order or is made to appear by clear and satisfactory evidence. On review by certiorari, it is our duty to examine the Order and record before us to determine whether the Commission’s action is in accord' with essential requirements of law and to determine whether the Commission had before it competent substantial evidence to support its findings and conclusions. General Telephone Company of Florida v. Carter, 115 So.2d 554 (Fla.1959). See also F.S. § 350.641, F.S.A.
Petitioner contends that we should quash the Commission’s order because the Commission relied solely upon evidence pertaining to the interstate operations of the railroad and did not have before it and did not consider any reliable separate. evidence to establish the reasonableness of the railroad’s proposed intrastate freight rate increases. The thrust of the petitioner’s complaint is that the Commission’s order is void on its face and further that it is not supported by competent substantial evidence of record.
Our examination of the Commission’s order granting the intrastate rate increases shows' that it begins by reciting that the railroads sought authority to increase certain Florida intrastate rates and charges by the same percentages granted by the Interstate Commerce Commission for interstate traffic between points within the South, in Interstate Commerce Commission Order Docket Ex Parte #256. Referring to the orders of the Interstate Commerce Commission .the Florida Public Service Commission then stated:
“In its interim prder, as well as its final order, the Interstate Commerce Commission took note of the fact that the petitioning railroads were ‘going to make’ the same increases effective on intrastate rates in the various states. Section 13(4) of Part I of the Interstate Commerce Act provides that the Interstate Commerce Commission shall have the power to fix intrastate rates whenever it finds, after investigation and hearing, that existing intrastate rates cause undue descrimination against, or undue burden upon, interstate commerce. This power may be exercised by the Federal Agency without a separation of interstate and intrastate property, revenues, and expenses, and without considering in totality the operations or results thereof of any carrier or group of carriers wholly within any state. This power may also be exercised by the Interstate Commerce Commission even though the rates in question are pending before, or have not even been considered by the state regulatory agency having jurisdiction over such intrastate rates. Normally, a state agency such as this one, is required to consider separately the property, revenues, and expenses, directly related to intrastate operations. In the present posture of the Federal law, however, railroads never favor the state regulatory commission *565 zvith any reliable separation data. They rely almost entirely on the shozmng they, have already made before the Interstate Commerce Commission, and the presumption that operating conditions are virtually the same zvhether the traffic is moving in interstate, or intrastate commerce. The result is that state regulatory commissions seldom have a satisfactory record upon which to base their decisions in general increase cases where railroads are concerned. When the Interstate Commerce Commission considers an interstate general increase case, it usually considers that the revenue provided by the increased interstate rates will be supplemented by similar increases on intrastate rates. In the present situation, the increases granted by the Interstate Commerce Commission were not calculated to produce all the increased revenue the railroads were seeking. Obviously, under a Section 13 proceeding when considering the unseparated .properties, revenues, and expenses, of the railroads, the Federal Agency would require intrastate rates to provide some portion of the increased revenues that it had already found the railroads need to maintain an adequate transportation system. Under the prevailing Federal Statutes, the state regulatory agencies have lost much of their former jurisdiction over intrastate railroad freight rates. At the same time,- the requirements of Florida Laws, as interpreted by the Supreme Court of this State, are still in full force and effect when this State agency is considering the proper level of intrastate freight rates. Such conflicting laws create difficult problems for state regulation and resulting decisions almost invariably must find their support -on records made before a Federal' Agency, and in the light of that agency's decision, rather than on the record made before the state agency. This is the case in this present proceeding. A denial of the requested relief by this agency, on the basis of the record made in this proceeding, might well be justified; but it would be futile in the long run and only subject the railroads to further expense and delay. Such action would serve no useful purpose and would be contrary to this Commission’s actual knowledge of existing conditions concerning the need of petitioning railroads for increased revenues to meet constantly increasing operating costs. We look therefore, beyond the specific record made before this Commission in this proceeding, and give consideration to the record made before the Interstate Commerce Commission in its Docket Ex Parte 256, which has been filed with us for such me as may be proper.” (Emphasis added)
After reviewing the economic plight of the railroads and again citing the findings of the Interstate Commerce Commission to the effect that at the present level of freight rates are inadequate, the Commission continued:
“There is nothing in the record in this proceeding which would justify this Commission in reaching a finding, contrary-to the foregoing conclusion of the Interstate Commerce Commission, insofar as the requirements of petitioning carriers are concerned.
“Insofar as the rates, which the carriers have proposed, are concerned, there is no basis in the present record on which we could predicate a finding of unreasonableness.”
Based upon the facts recited above the Florida Public Service Commission found that the railroads were in need of additional intrastate revenue and therefore increased intrastate freight rates on certain items transported in intrastate commerce.
On its face the Commission’s order violates the essential requirements of law in several particulars. First, the Commission points out that although reliable separation data is a necessity, that the record before it contains no such reliable data. In reaching this conclusion the Commission places its principal reliance on its belief that in the event it should deny the *566 railroad’s application for increased intrastate rates, the Interstate Commerce Commission would pursuant to § 13, Interstate Commerce Act, declare the present Florida intrastate rates an undue burden on interstate commerce and increase the intrastate rates itself. Although this fear may be justified, the Florida Public Service Commission cannot shirk from its statutorily imposed responsibility to see that its orders are supported by competent substantial evidence and that the rates it fixes for the transportation of intrastate freight, are reasonable and fair. The order under review herein on its face shows that the Commission did not have before it competent substantial evidence to support its findings and that the railroads were entitled to an increase in their intrastate freight rates. The Commission’s order recites that although it is “required to consider separately the property, revenues and expenses (of the railroads) directly related to intrastate operations” the record before it did not contain “any reliable ■ separation data.” This fatal deficiency clearly appears from the face of the order challenged.
The action of the Florida Public Service Commission herein is quite reminiscent of a similar invalid order issued by it in the case of the Florida Rate Conference v. Florida Railroad and Public Utilities Commission, 108 So.2d 601 (Fla.1959). In the Florida Rate Conference case, the Railroad Commission, after determining the total amount of additional revenue that it would take in its judgment to give the motor carriers involved an adequate return on their investment, stated that the study designed to separate intrastate income and expenses from interstate income and expenses was “unreliable” but that the Commission nevertheless was going to make use of it because it had no other source from which to draw in making the apportionment of revenues and expenses which the Commission held was a necessary prerequisite to its entering a valid order. This court in the Florida Rate Conference case, held that the Commission’s order entered under such circumstances was, on its face, not based upon competent substantial evidence legally sufficient to support the Commission’s findings and conclusion.
In the instant case the Commission’s order on its face clearly points out that “normally” the Commission is required to consider separately the property, revenues and expenses related to intrastate operations but that in the present case the railroads have not favored the Commission with any “reliable separation data.” The Commission’s order further indicates that the railroads have relied “almost entirely on the showing they have made before the Interstate Commerce Commission.” The Commission then reaches its conclusion that a denial of the rate increase on the basis of the record before the Florida Public Service Commission “might well be justified; but it would be futile,” because of § 13(4) which permits the Interstate Commerce Commission to increase intrastate rates which are unduly low and thus are a burden on intrastate commerce. Such an order on its face violates the essential requirements of law which place upon the Commission the duty to make an independent determination of what constitutes fair and reasonable rates for the intrastate transportation of freight. The instant order on its face discloses that the Florida Public Service Commission acted solely because of what it conceived the Federal authorities would do if it failed to raise the intrastate rates and not because of any showing that was made in proceedings before it. In its determination of matters affecting intrastate commerce, the Florida Public Service Commission is required by our statutes and case law to reach its own independent findings and conclusions based upon the record before it. In the instant cause the order entered by the Commission on its face discloses that the Commission did not pursue such a course of action.
For the reasons above stated, petition for writ of certiorari is granted and the Order #4324 of the Florida Public Service Commission is quashed and this cause is remanded to the Florida Public Service *567 Commission for further proceedings not inconsistent herewith.
It is so ordered.
PER CURIAM.
The foregoing opinion and judgment by HOPPING, J., prepared by him prior to the expiration of his term of office on January 6, 1969, is hereby adopted as the opinion and judgment of this Court.
It is so ordered.
ERVIN, C. J., and DREW, THORNAL and CALDWELL (Retired), JJ., concur.