ENGLAND, Justice.
By petition for the writ of certiorari to the Public Service Commission, several associations of shippers utilizing the services of general commodity motor carriers bring to us for review two Commission orders which increase freight rates. We have jurisdiction.[1]
An application for increased rates was filed by the Florida Intrastate Rate Bureau (the “Bureau”), an organization formed by a number of carriers. The Bureau requested an across-the-board rate increase of 15%, coupled with the cancellation of a 6% fuel surcharge previously granted by the Commission, or a net increase of 9%. Hearings were conducted at which carriers introduced evidence in support of the increased *1153 rates and shippers developed evidence to the contrary. At the conclusion of all proceedings the Commission found that the increase requested was not justified, but that a lesser increase was necessary to provide the carriers with reasonable and just rates. The Commission approved an overall rate increase composed of a 6% increase for full truckloads, a 10% increase for less-than-truckload rates, and the elimination of the 6% fuel surcharge. The Commission also adopted for less-than-truckload rates the current minimum charges of the Southern Motor Carriers Rate Conference Southern Class Tariff, as approved by the Interstate Commerce Commission for interstate carriers in the southeastern United States. The Commission further found:
“Although such a rate increase will result in operating ratios below the 95% level advocated by some parties, it gives recognition to conditions which have occurred after the end of the test period . but which are clearly evident, such as the continuing inflationary forces which have not abated since this application was filed.”
Petitioner-shippers complain to us that there was no evidence before the Commission to show (i) that variations in cost exist among the various types of carrier service provided by general commodity carriers, (ii) that rates established for interstate carriers in the southeastern United States are readily applicable to intrastate carriers in Florida, or (iii) that inflation had produced a specific dollar effect on carriers since the application had been filed. Although they do not suggest that an overall increase in rates is unjustified, petitioners contend that the adoption of the rate schedules which provide the additional money were arbitrarily approved and unsupported by competent and substantial evidence. They also call to our attention a lack of notice for what the Commission has done, stating that increases of 34% have been approved for the smallest shipments although shippers of small commodities did not appear in the proceeding due to their belief that the maximum increase sought by the Bureau was 15%.
While the Commission has been vested with the authority to exercise discretion in prescribing rates and this Court will not disturb its orders unless they fail to comport with the essential requirements of law,[2] the orders in this case suffer from two basic errors.
The Commission granted the carriers unrequested relief from inflationary factors occurring after the application was filed, relying on Gulf Power Corp. v. Bevis, 289 So.2d 401 (Fla.1974). That case in no way stands for the principle the Commission applied. In that case the Court directed the Commission to approve rates which took into account as an “out of period adjustment” to the utility’s test year a known corporate income tax liability the amount of which was owed at a date certain. That case differed only in degree from prior decisions which had allowed the test year concept of rate-making to be expanded for known and ascertainable liabilities occurring after the test period. Gulf Power does not stand for the proposition that the Commission possesses unlimited authority to expand the concept of an “out-of-period adjustment” to include undocumented conclusions as to general economic conditions. Such a doctrinaire application of Commission “expertise” would obviate the use of test years as a tool in rate-making.[3] The Commission erred, therefore, in grounding a rate increase to any extent on out-of-period “inflationary” factors.
*1154 The Commission also erred in adopting an interstate rate schedule for intrastate carriers without a factual foundation to do so. In International Minerals & Chemical Corp. v. Mayo, 217 So.2d 563 (Fla.1969), we held that the Commission cannot adopt interstate rates and thereby “shirk from its statutorily imposed responsibility to see that its orders are supported by competent substantial evidence.”[4] The Commission grounds its adoption on reasoning expressed in a post-International Minerals proceeding not reviewed by this Court,[5] where the Commission explained that intrastate operating costs are generally not less that interstate operating costs:
“Such factors as traffic congestion, the number of short haul movements in Florida, humid climate, associated maintenance expenses, and other factors make it difficult if not impossible to reach the conclusion . . . that Florida carriers can operate less expensively than a typical interstate carrier. ... In summary, we cannot agree that we are precluded . . . from making intrastate rates comparable to interstate rates where such action results in reasonable freight rates and charges, and is predicated upon independent findings by this Commission.”
Of course the type of factors mentioned by the Commission also make it “difficult if not impossible” to conclude that Florida carriers in fact operate at precisely the same cost levels as interstate carriers. Despite that fact, the Commission’s decision in the cited proceeding was ostensibly _ based on an element not present to any degree in this proceeding — “independent" evidence developed before the Commission to sustain its ultimate finding that the interstate rate schedule was reasonable. In this case, there is no factual record to support a finding as to the reasonableness of a new set of rates exactly equivalent to those used interstate.
Obviously the Commission must structure the burdens of a justified rate increase so that individual rates are fair and reasonable, and in doing so the Commission can use its expert judgment. Rate differentials set in accordance with operating cost differentials are generally favored, although not required. But whatever basis for its “informed” judgment, the Commission cannot avoid its obligation to gather reliable information of some form to sustain its allocation of cost burdens.
The writ of certiorari is granted, Commission Orders No. 11975 and 12029 are quashed, and the cause is remanded to the Commission for further proceedings consistent with this opinion.
OVERTON, C. J., and SUNDBERG and HATCHETT, JJ., concur.
ROBERTS, ADKINS and BOYD, JJ., dissent.

. Art. V, § 3(b)(3) Fla.Const.; § 350.641, Fla. Stat. (1975).

. Tamiami Trail Tours v. Carter, 80 So.2d 322 (Fla.1955).

. For one thing, we know of no basis on which the Commission can claim expertise regarding inflationary factors in the economy generally or in the trucking industry in particular. For another, whatever factors might be the thrust of evidentiary presentations they could never justify an expansion of test year data because predictions of future inflation are necessarily imprecise. They could not, therefore, constitute substantial competent evidence. See Milford Copper Co. v. Industrial Comm’n, 61 Utah 37, 210 P. 993, 994 (1922), cited with approval in Florida Rate Conf. v. Fla. RR. & Pub. Util. Comm’n, 108 So.2d 601 (Fla.1959).

. 217 So.2d at 566.

. Order 11238, filed February 15, 1974, Docket No. 72611-CCT.