124 So.2d 9 (1960)
GREYHOUND CORPORATION, SOUTHEASTERN GREYHOUND LINES DIVISION, Petitioner,
v.
Jerry W. CARTER, Alan S. Boyd and Wilbur C. King, as and constituting the Florida Railroad and Public Utilities Commission, Respondents.
Supreme Court of Florida.
October 21, 1960.
Rehearing Denied November 28, 1960.
*10 Wayne K. Ramsay and Milam, LeMaistre Ramsay & Martin Jacksonville, for petitioner.
Lewis W. Petteway and Guyte P. McCord, Jr., Tallahassee, for Florida Railroad and Public Utilities Commission; A. Pickens Coles, Tampa, Clifford T. Inglis, Jacksonville, and Coles & Himes, Tampa, for Tamiami Trail Tours, Inc., respondents.
KEHOE, Circuit Judge.
This is a petition for writ of certiorari filed by Greyhound Corp., Southeastern Greyhound Lines Division, to review order No. 4809 of the Florida Railroad and Public Utilities Commission, granting intervenor, Tamiami Trail Tours, Inc., two extensions to its certificate of Public Convenience and Necessity.
The two extensions involved are from Gainesville to Jacksonville via Orange Heights and Melrose over State Highway 27, thence over State Highway 21 to Jacksonville via Keystone Heights, Middleburg and Wesconnett (hereinafter called the Gainesville Extension) and from Canal Point to Jacksonville (hereinafter called the Canal Point Extension). In practical effect the first extension allows Tamiami a through service from Jacksonville to Miami via Tampa and the West Coast; the second, a through service from Jacksonville via Canal Point to Miami. Greyhound already operates several schedules daily between Jacksonville and Gainesville, though not over the particular route involved. Greyhound also operates from Jacksonville to Miami via U.S. 1 with several cross-state feeder lines joining the main line along the East Coast. Greyhound also has a certificate to operate from Jacksonville to Miami via Orlando, Canal Point and West Palm Beach but prior to the application here concerned did not operate such as a through service.
Greyhound, in its brief, urges several grounds which we consolidate for convenience' sake as follows:
1. The Commission departed from the essential requirements of law by permitting Tamiami to introduce certain resolutions, by allowing hearsay and opinion testimony, and in finding that the public convenience and necessity requires four new schedules between Jacksonville and Gainesville.
2. The Commission erred in finding public convenience and necessity required the extensions.
3. There is no substantial competent evidence from which the Commission could find that Greyhound has failed in its duty to the traveling public.
4. The Commission erred in not considering the service of Greyhound subsequent to the filing of the application by Tamiami.
Considering first the question of public convenience and necessity, it is clear that the overwhelming weight of authority, with which Florida is in accord, holds, as expressed by this Court in Seaboard Air Line Railway v. Wells, 100 Fla. 1027, 130 So. 587, 588; "The word `necessity' as used in the statute does not mean an absolute and indispensable necessity, but rather that the proposed service is reasonably necessary to meet the public needs." Possibly *11 the rule is best stated by the Colorado Public Utilities Commission in Re John T. Donovan, 1921 D PUR 488 as follows:
"In application No. 62, decided January 17, 1920, the Overland Motor Express Company applied for a certificate of public convenience and necessity for the transportation of freight by auto truck between Denver and Boulder. This application was resisted by an existing auto freight truck carrier who had theretofore been granted a certificate but no railway carrier made objection or appeared in opposition to such application. In the course of that decision, this Commission undertook to construe the legislative meaning of the phrase `public convenience and necessity'; as used in the Public Utilities Act, and based largely upon the interpretation of the New York Act by the New York Public Service Commission in re Troy Auto Car Co. PUR 1917 A, 700-707, wherein it was held that the words `convenience and necessity' could not be split in two; that a thing necessary would always be convenient and that to show a strict necessity was not required. In other words `convenience' and `necessity' must be construed together to mean such a state of facts exists as show a reasonable necessity to meet a convenience of the public."
or again, as the Supreme Court of Appeals of Virginia has said in Seaboard Air Line R. Co. v. Commonwealth, 193 Va. 799, 71 S.E.2d at pages 146 and 150:
"So here the word `convenience,' as connected with the word `necessity,' is so connected, not as an additional requirement, but to modify and qualify what might otherwise be taken as the strict significance of the word `necessity.' * * * In the phrase `public convenience and necessity' the word `necessity' means that which is needful, essential, requisite or conducive to `public convenience.' When more convenient and adequate service is offered to the public it would seem that necessity requires such public convenience should be served."
See also State ex rel. Missouri Kansas & Okla. Coach Lines v. Public Service Commission, 238 Mo. App. 317, 179 S.W.2d 132, at page 136.
In regard to the Gainesville Extension it should be noted that Greyhound's certificate was revoked by order No. 4808, certiorari from which we have today denied. However, even if we must look to conditions as they existed on the day application for the extension was made, Greyhound's certificate had already become dormant through failure to serve for a period of longer than 6 months without the formal approval required by statute. Thus the inquiry re the Gainesville extension is not actually one of duplicated service. No one was authorized, either on the date of application or on the date order No. 4809 was handed down to operate through Melrose, Orange Heights, Keystone Heights, Middleburg and Wesconnett. It is quite true that Greyhound was operating between Gainesville and Jacksonville, and that the Commission had recently authorized a reduction in that service but it seems to us that the essential point is that Greyhound was operating over an entirely different route leaving this particular route unserviced. Since Greyhound's certificate was dormant, no carrier, so far as appears, was certified to operate over this route. The question of public convenience and necessity thus has a different complexion on this extension than on the Canal Point extension which is essentially a duplicated service and to which different principles must be applied.
The Commission has found that "The testimony and evidence presented by the applicant (Tamiami) amply showed that public convenience and necessity require the proposed service. There is not only a present need for the service but the continuing rapid growth of this section of the *12 state and the West Coast area generally indicates a need from the standpoint of future public convenience and necessity."
This court's function in matters before it on certiorari has often been discussed (see e.g. Great Southern Trucking Co. v. Douglas, 147 Fla. 552, 3 So.2d 526; Atlantic Coast Line R. Co. v. Railroad Commission, 149 Fla. 245, 5 So.2d 708; Florida Motor Lines Corp. v. Douglass, 150 Fla. 1, 7 So.2d 843; Tamiami Trail Tours v. Carter, Fla., 80 So.2d 322). In the last cited case in the original opinion which we readopted and adhered to in the rehearing of Alterman Transport Line v. Carter, Fla., 88 So.2d 594, we stated as follows:
"It is only in those instances, as we have said on many previous occasions, where it is made clearly to appear to us that the Commission has done an illegal or unauthorized act, has exceeded its jurisdiction or failed to accord with the essential requirements of the law, that we are authorized to interfere with its actions. It is indeed a narrow corridor through which the petitioner must pass and we should be most circumspect not to transgress its limitations. Proper restraint in this connection on the part of this Court clearly preserves the true historical purpose of the Courts and leaves the Commission the power effectively to function within its limited field of operation under the Constitution and Statutes.
"We have assiduously searched the record here and have failed to find that in this case the Railroad Commission either exceeded its jurisdiction or failed to observe the essential requirements of the law in the issuance of the challenged order or that such order is in any respect illegal or unauthorized. It is not our function to examine and weigh the evidence in detail. In Nelson v. State ex rel. Quigg, 156 Fla. 189, 23 So.2d 136, we said, and now repeat:
"`We have held, and it seems to be an almost universal rule, that the findings of fact made by an administrative board, bureau, or commission, in compliance with law, will not be disturbed on appeal if such findings are sustained by substantial evidence * *.
"`The rule invoked herein is salutary and founded in good common sense and irrefutable logic. It should be adhered to religiously * * *.'
"The responsibility is upon the petitioners here to make it clearly appear to us that the challenged order is so defective in one of the aspects hereinbefore named as to bring into operation the powers of this Court to vacate it. No such showing has been made. Moreover, there can be no question but that whatever harm may be suffered by protestants in granting the permit is so inconsequential when arrayed alongside the obvious benefits which will be received by the various public interests affected, as to support clearly the conclusions reached by the Commission in the exercise of the discretion vested in it under the law." [80 So.2d 324]
Likewise in the instant case there has been no showing that the Commission has done an illegal or unauthorized act, has exceeded its jurisdiction, or failed to accord with the essential requirements of the law, for it has found in a hearing completely regular under the statute that public convenience and necessity exists for service over a route not now served at all. Further considerations, which may or may not be sufficient standing alone to warrant granting the applications, add weight to the Commission's determination. Such considerations are the need and advantage of through bus service from the lower West Coast to Jacksonville  and indeed beyond in Interstate Commerce; the elimination not only of transfer of passengers from the facilities of one company to those of another, but the elimination as well of transferring from one station to another, with the attendant *13 loss of time, delay in baggage handling and general passenger inconvenience (cf. Tamiami Trail Tours v. Railroad Commission, 128 Fla. 25, 174 So. 451, 453). Having so found in a proper proceeding, the Commission did not depart from the essential requirements of law, provided that there was "substantial competent evidence" to support their findings. We discuss the evidence question below.
Coming then to the question of convenience and necessity for the Canal Point Extension, we are immediately faced with a problem of a different sort, since essentially this is a duplicating or competitive type of service. That the commission recognized that it was dealing with a different problem is apparent from its comments on the inadequacy of service over this route and its statement that "though Chapter 323, Florida Statutes, affords considerable protection for existing certificate holders against competition, it does not guarantee or contemplate a complete monopoly where public convenience and necessity for a new service is shown."
The question of an application by a competing carrier is governed in this state by the provisions of F.S.A. § 323.03(3):
"When application is made by an auto transportation company for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission."
This court has frequently had occasion to interpret this statute, thus in Atlantic Coast Line R. Co. v. Railroad Commission, 149 Fla. 245, 5 So.2d 708, and Florida Motor Lines Corporation v. Douglass, 150 Fla. 1, 7 So.2d 843, over a vigorous dissent, the court upheld the grant of a certificate of convenience and necessity to a junior competitor. In Great Southern Trucking Co. v. Mack, Fla. 54 So.2d 153, 155, the court again had occasion to construe the statute which it did in the following terms:
"On several occasions we have held that it is not the policy of the law to encourage destructive competition and thereby adversely affect existing service, but the law seeks to avoid a duplication of investments and other operating expenses or congestion of traffic on the highways. If a new carrier seeks to enter the field, it is generally held that it must show that the existing services are not adequate to serve the public need. Central Trucking Lines, Inc. v. Railroad Commission, 118 Fla. 555, 160 So. 26, 30.
"Section 323.03(3), supra, requires the commission, prior to granting a certificate as applied for, to hear all evidence and thereafter take into consideration the effect that the granting of its approval of a duplicated service would have upon the transportation * * * as a whole within the affected territory. The burden of proof which the law imposes was on the applicant to show that the public convenience and necessity demanded or warranted the granting of the proposed service.
"In the case of the Central Trucking Lines, supra, we said: `Where an inquiry is required to be had on the question of public convenience and necessity with respect to either the institution of an entirely new service, or the material extension, modification, or alteration of an existing service in such manner as to amount to the same thing, it must be affirmatively established by appropriate evidence, and duly found by the commission therefrom, that the particular new service proposed to be brought into existence or made effective is required in the interest of public convenience and necessity. Absent such affirmative finding bottomed on a sufficient factual showing to substantially *14 support it, the Railroad Commission is without authority to grant its approval for the inauguration of a substantially new service, regardless of the form in which it is applied for, and orders so made by the commission under such circumstances are in violation of the essential requirements of law and should be quashed when relief therefrom is sought by affected parties in a proceeding by certiorari * *."
Again in Alterman Transport Line v. Carter, Fla., 88 So.2d 594, 598, on rehearing, the court receded from its original decision in the same case and the decision on rehearing in Tamiami Trail Tours, Inc., v. Carter, Fla., 80 So.2d 322 in the following words:
"In Tamiami Trail Tours, Inc., v. Carter, Fla., 80 So.2d 322, on rehearing, 80 So.2d 328  329, we extended the doctrine of the Redwing Carriers case to apply to a situation where there was no special equipment needed for the transportation of a new product. After reconsideration of the rule which we there laid down, in the light of the facts of the instant case, we recede from it in its entirety and adhere to the original opinion of Mr. Justice Drew in that case.
"In the case now before us, a further extension of the rule of the Redwing Carriers case is contended for. As we have stated above, we cannot accept it.
"The rule of the Redwing Carriers case must be restricted to the facts which were there before us, as we have outlined them above. Under the last sentence of our statute, which we have quoted, a certificate should not be granted where there is existing adequate service over the route applied for and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may reasonably be `required' by the commission. The commission need not first require, or formally require, such service. A new certificate can be granted by the commission on proof of public convenience and necessity therefor if the existing certificate holder has had an opportunity to provide the service and has failed to do so, and the service is within the jurisdiction of the commission reasonably to be required. This interpretation of the statute offers some protection to existing franchise holders, but at the same time permits the commission to be guided in all cases by its polar star: the public convenience and necessity. When a new certificate is applied for, the certificated carrier has the burden of explaining why it has not met the need for the new service, if any such need there is, and in the ordinary case the failure of existing carriers to meet reasonable requirements, mentioned in the last sentence of F.S.Sec. 323.03(3) F.S.A., should be considered as of the time of application for the new permit, and not at some future date."
As recently as Ace Delivery v. Boyd, Fla., 111 So.2d 448, 451, the court reiterated its position in regard to competitive service saying:
"We think the petitioners probably overlook the proposition that in every proceeding of this nature, the public is an unnamed but, nonetheless, essential party. We must, of course, give due regard to the rights of applicants for new certificates, as well as the rights of protestants in the protection of existing certificates. However, the fact remains that the sextant which should keep the respondent commission on its proper course is the welfare of the public in the development of an adequate transportation service."
The Commission in the case now before the court specifically found that "Greyhound has provided an adequate service between Jacksonville and Miami over its coastal route  U.S. Highway 1, but service over the inland route has been for less adequate. *15 The testimony shows a definite need for service for this area." The Commission further found that "public convenience and necessity require the proposed extension of applicant's certificate and the granting of these applications will have no appreciable adverse effect upon transportation facilities within the territory sought to be served by said applicant or upon transportation as a whole within the said territory."
Here, provided the Commission's findings are based on "substantial competent evidence," the court can find nothing illegal about the order or that it is against the essential requirements of law.
We come then to the important question of evidence. This court is committed to the "substantial evidence" doctrine in agency hearings and has phrased its concept of what constitutes such evidence in various ways (cf. The Substantial Evidence Rule in Fla.Administrative Law, Parsons, 6 U.F.L.R. 481). Most of the recent Railroad and Public Utility Commission cases seem to have settled upon the threefold formula "competent substantial evidence which is legally sufficient to justify the findings and conclusions" (Florida Motor Lines v. Douglass, 150 Fla. 1, 7 So.2d 843; Pensacola Transit v. Douglass, 160 Fla. 192, 34 So.2d 555; Benton Bros. Film Exp. Inc., v. Florida Railroad & Public Utility Commission, Fla., 57 So.2d 435; General Telephone v. Carter, Fla., 115 So.2d 554). However, "competent substantial evidence" is made the norm and is defined in De Groot v. Sheffield, Fla., 95 So.2d 912, 916, (not a R&PUC case), and that definition is made applicable to a Railroad and Public Utilities Commission case by Florida Rate Conference v. Florida Railroad & Public Utilities Commission, Fla., 108 So.2d 601, 607, as follows:
"And in this state in the recent case of De Groot v. Sheffield, supra, Mr. Justice Thornal capably defined the term and its usage when he wrote:
"`We have used the term "competent substantial evidence" advisedly. Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion * * * In employing the adjective "competent" to modify the word "substantial," we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed * * *. We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the "substantial" evidence should also be "competent".'"
There has been an objection by petitioner to the introduction of hearsay and what it chooses to call opinion testimony from witnesses not qualified as experts. While it is true that several witnesses made hearsay statements and expressed opinions, they also testified of their own knowledge to such facts as: present traffic and parking conditions, present population figures, age and financial status of the population affected, present bus schedules and the inadequacy thereof, present terminal facilities and inadequacy thereof, present need either of the witness himself and his immediate associates, or of those interests which it was the duty of the witness to represent. These were facts from which the Commission could (cf. Eager v. Public Utilities Commission of Ohio, 113 Ohio St. 604, 149 N.E. 865; Atchison, T. & S.F. Ry. Co. v. Public Service Commission of Kan., 130 Kan. 777, 288 P. 755) and did find that over the Gainesville-Jacksonville route public convenience and necessity required the granting of the application and from which the Commission could and did find that over the Jacksonville *16 Canal Point route present service by the certificated carrier was inadequate and that public convenience and necessity required the granting of the application even though it would result in competition for the existing carrier. Despite the fact that there was evidence admitted which would obviously be inadmissible under strict rules of evidence  if indeed administrative agencies are to be held to such strict rules  there was also admitted substantial competent evidence sufficient to justify the findings and conclusions. It is quite generally held that the introduction into an agency hearing of evidence which is irrelevant or incompetent will not of itself render the agency ruling invalid if there is substantial competent evidence to sustain the ruling, (Terre Haute Gas Corp. v. Johnson, 221 Ind. 499, 45 N.E.2d 484, 48 N.E.2d 455 under an Indiana statute similar to F.S.A. § 54.23; City of Pittsburgh v. Pennsylvania P.U.C., 174 Pa.Super. 224, 101 A.2d 127; Sisto v. Civil Aeronautics Board, 86 U.S.App.D.C., 31, 179 F.2d 47, under Federal Administrative Procedures Act; State ex rel. Potashnick Truck Service v. Public Service Commission of Mo., Mo. App., 129 S.W.2d 69).
Petitioner contends that Rule XIII of the Commission's Rules of Practice and Procedure, in effect at the time of the hearing, has been violated by the introduction into evidence of resolutions of various county and city commissions.
Rule XIII (last paragraph thereof) reads as follows:
"The Commission will not accept or enter for record or evidence petitions, letters of opinion or other communications, unless such material has been specifically requested by the Commission from persons deemed to possess the legal or technical qualifications to enable them to render valuable services by so doing, except that the contents of section shall not be construed to apply to City, County, or Governmental agencies, when same are duly authorized and attested under seal, and made in regular course of business, in which case same may be filed in advance as information."
Rule I reads:
"In general the rules of evidence applicable to hearings before the Florida Railroad and Public Utilities Commission shall be the general rules of evidence applied to the circuit courts of this State, with such exceptions as the Commission may make." (Emphasis supplied.)
The pre-hearing order provided:
"Ordered that copies of resolutions of, or official records showing the official action of, state, county or municipal governmental agencies under the seal of any such agency and authenticated by the signature of the proper official or clerk of such agency will be admitted in evidence but only for the purpose of showing the official action taken by such agency and not as evidence of any factual matters stated in such resolution. Any such factual matters must be proven by direct testimony, affording any opposing party the opportunity of cross-examination."
This provision of the pre-hearing order seems only a paraphrase of the last sentence of Rule XIII, and in fact defines the limited use to which the Commission itself will put such evidence. There is nothing to show that the Commission made any other use of the evidence, and if its admission was error, which is doubtful, it was harmless error in view of the more than ample evidence of public convenience and necessity. All three commissioners were agreed that overwhelming lack of convenience was shown; we cannot agree that a lot of convenience does not add up to a little necessity (Tamiami Trail Tours v. Railroad Commission, 128 Fla. 25, 174 So. 451, 453). The concepts are so closely interwoven, as pointed out above, as to have meaning only when considered in conjunction one with the other (cf. also Union Pac. R. Co. *17 v. Public Service Comm. of Utah, 103 Utah 459, 135 P.2d 915). The need of the public stands in direct proportion to the lack of convenience.
Finally petitioner contends that the Commission should have considered its services, instituted subsequent to the date of the intervenor's applications. This question has been answered by the opinion on rehearing in Alterman v. Carter, 88 So.2d 594, 598, already quoted, where we said:
"* * * When a new certificate is applied for, the certificated carrier has the burden of explaining why it has not met the need for the new service, if any such need there is, and in the ordinary case the failure of existing carriers to meet reasonable requirements, mentioned in the last sentence of F.S.Sec. 323.03(3), F.S.A., should be considered as of the time of application for the new permit, and not at some future date."

Applying the rules which we have stated, it is apparent that the Commission was correct in granting the applications below.
It follows that the petition for writ of certiorari must be, and it is hereby denied.
TERRELL, Acting C.J., ROBERTS and O'CONNELL, JJ., and WIGGINTON, District Court Judge, concur.