THORNAL, Justice.
By a petition for writ of certiorari we are requested to .review an order of the Florida Railroad and Public Utilities Commission granting a certificate of private contract carriage to William C. Hill.
We must determine whether the respondent Commission exceeded its jurisdiction or departed from the essential requirements of the law.
Perry Printing Process Company, at Ocala, publishes and distributes to sixteen newspapers throughout the state a Sunday supplement, known as the “All Florida Magazine.” Prior to March 1, 1959, the magazine feature was printed approximately thirteen days in advance of the date when it would be carried in the Sunday editions of the subscribing newspapers. The then existing certificated common carriers, which included the petitioners, Central Truck Lines Inc., and M. R. & R. Trucking Company, transported the magazine to the various subscribers. This required an interlining arrangement between Central and M. R. & R. at Jacksonville. Inasmuch as the magazine was printed so far in advance of ultimate circulation, speed in transportation was not an element. The certificated carriers, under their arrangement with the publisher, were allowed as much as four to six days for the transportation service. On or about March 1, 1959, Perry Printing Process began including in the All Florida Magazine, a television guide. As a result of the T. V. addition it became necessary that the publication be printed at the latest possible date in order to enable the publisher to accomplish relatively absolute accuracy in the television section prior to distribution to the subscribing newspapers. Perry Printing Process thereupon discontinued the services of the certificated carriers and entered into an arrangement with Hill, doing business as Hill’s All-Florida Express to transport the magazine feature section as a private contract carrier. The announced reason for the new arrangement was to accomplish twenty-four hour delivery service from Ocala, the place of printing, to the various subscribing newspapers. Perry justified the arrangement with the contention that the existing certificated carriers could not accomplish delivery of the magazine to the various subscribing newspapers within twenty-four hours of the time of printing. After transporting the papers for several months without benefit of certificate from the respondent Commission, Hill finally, on October 29, 1959, filed the instant application for a certificate of public convenience and necessity as a private contract carrier. The application was protested by the petitioners Central and M. R. & R. After two hearings the respondent Commission’s examiner recommended an order denying Hill’s application. Ultimately, the respondent Commission declined to follow the recommendation of its examiner and granted the application. By its order No. 5242, the Commission, in effect, found that the petitioners had not been completing delivery within the time required by the new publication. It was conceded that the service rendered prior to March 1, 1959, was completely satisfactory for the type of publication then printed. The Commission also found that on the basis of the record the petitioners could not render the twenty-four hour delivery service .required by the publisher, and that the type of service needed was the specialized, direct, quick-delivery service offered by the applicant Hill. On the basis of these findings, the certificate of public necessity and convenience was granted to Hill.
The petitioners here contend that the respondent Commission failed to consider the fact that for several months Hill had operated without legal authority and also that the Commission should not have overruled the findings of its examiner without taking additional testimony. The Commission excused Hill’s failure to obtain a *479 certificate promptly because of a misunderstanding that the magazine section was an exempt commodity, the transportation of which did not require a certificate. On this point the Commission acted within the scope of its authority in finding a justifiable excuse for the failure of Hill to make application sooner than he did.
In regard to the failure of the Commission to take additional testimony as a condition to .refusing to follow the recommendations of its examiner, we have held that because of Section 323.07, Florida Statutes, F.S.A., the respondent Commission is not bound by the findings of its examiners. It is authorized to make its own independent findings of fact and conclusions of law on the basis of the record submitted. Coast Cities Coaches, Inc. v. Florida Railroad & Public Utilities Commission, Fla.1962, 139 So.2d 674; Tamiami Trail Tours v. Carter, Fla.1954, 80 So.2d 322. (Original Opinion) We must repeat what we have said before. If the rule is to be changed such a change must stem from a legislative re-evaluation of the necessity or justification thereof. Regardless of the advisability therefor, until Section 323.07, Florida Statutes, F.S.A., is amended to provide some other rule, we must follow the existing provision as announced by the Legislature.
The main thrust of petitioners’ claim for a reversal involves a reliance upon that portion to Section 323.04(3), which reads as follows:
“When application is made by an auto transportation company for a certificate to operate as a private contract carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission.”
The petitioners, with some considerable support in the record, contend that. they were never afforded an opportunity to render the newly .required expedited transportation service. They point out that prior to March 1, 1959, they rendered, with complete satisfaction, the only service that the Perry Printing Process Company either needed or required. It is further pointed out that on the critical date the character of the commodity changed from one which permitted delivery over a period of several days, to one which became “perishable”, which required delivery within a much shorter space of time. This is a fact supported by the record. The petitioners then assert that the shipper discontinued their transportation service without notice and employed the services of the applicant without having afforded to the petitioners any reasonable opportunity to render the newly required service, although they were ready and willing to do so and were well-equipped to meet the requirements.
There is much that could be said in support of the petitioners’ contentions. If we were sitting in the position of the respondent Commission we might be inclined to agree with the position of the petitioners here. There are, however, certain factors in the record which lead us to conclude that in the entry of its ultimate order the respondent Commission has neither deviated from the essential requirements of the law, nor has it entered an illegal order. The Ocala manager of Perry Printing Process testified that after they started the insertion of the T. V. Guide a representative of Central Truck Lines communicated with him and “frankly admitted that at the present time or at that present time, they weren’t able to make pickups and deliveries on weekends and that he was going to investigate the possibility of seeing what they could do about it.” The Perry manager then testified that weekend pickups and deliveries were essential to adequate distribution of the new publication and that the Central .representative had never returned to advise that his company could render the service needed. Admittedly, there is a conflict, inasmuch as Central’s witness to *480 the conversation testified that he advised the Perry manager that they “would do most anything we had to [sic] get this business back.” The instant application was filed October 29, 1959. There is nothing in the record to indicate that the certificated carriers tendered to the shipper thei.r willingness or ability to render the needed service prior to the filing of the application. At the hearing before the examiner there was testimony that the certificated carriers could render the service. The language of Section 323.04(3), Florida Statutes, F.S.A., has been construed by numerous decisions of this Court. Under the decisions the availability of existing facilities to render the required service must be shown to exist prior to the filing of the application by one seeking to render a new or a duplicating service. Alterman Transport Line v. Carter, Fla., 88 So.2d 594; Ace Delivery Service, Inc. v. Boyd, Fla., 111 So.2d 448; Greyhound Corp., Southeastern Greyhound Lines Div. v. Carter, Fla., 124 So.2d 9; Jack’s Cookie Co. v. Florida, R. R. & Public Utilities Comm., Fla., 54 So.2d 695.
We do not here intend to hold that upon consideration of an application for a new type of service the Railroad and Public Utilities Commission has the power to impose retroactively upon existing carriers the necessity for a type of service not required prior to the application. In the instant case the Commission has found with sufficient evidentiary support that prior to the application the petitioners were not rendering the required service and that even after notice that the service was needed the petitioners failed to supply it or tender it. As stated above, the evidence on the point is in conflict but the .respondent Commission has resolved it in favor of the applicant. In addition, the Commission, with substantial evidentiary support, has found that the public necessity and convenience justifies the certification of the specialized, direct delivery service tendered by the applicant as contrasted to the multiple handling, interlining service tendered by the existing certificated carriers.
In this instance the “public” consists of several hundreds of thousands of readers of Sunday newspapers. The Commission has recognized the necessity for the type of service offered by the applicant in order to guarantee with greater assurance the prompt delivery of the subject magazine. In view of the Commission’s responsibility, to see to the preservation of a well-rounded transportation system, consistent with the public needs, we cannot conclude that the subj ect order was either illegal or in excess of the Commission’s jurisdiction. Whether we would have entered the order is not the point. Within the scope of review available to us, we merely hold that the Commission had adequate evidentiary support for its conclusion and in the entry of the order it did not depart from the essential requirements of the law.
We construe the authority granted to the applicant as extending only to the particular contractual service authorized by the certificate. It is limited in scope as an admittedly specialized type of service, justified by the character of the “perishable” commodity involved. We also construe the findings of the Commission as a holding that the applicant is financially able to render this specialized service on the basis of the direct-haul arrangement without any necessity or justification for any “back-haul” of commodities between the ultimate delivery points and Ocala. This latter problem is, admittedly, not here involved. However, we deemed it advisable to protect our conclusion against any implication that some such additional “back-haul” type of service would be justified in the future on the basis of showing made by the instant record.
The petition for a writ of certiorari is denied.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS and HOBSON (Ret.), JJ., concur. .