McCain, Justice
(dissenting):
I must dissent for a very cogent reason and trust that the majority has not created an Avernus by their Per Curiam denial of certiorari in these consolidated cases.
A statement of the salient facts is indispensable to the ultimate conclusion in this cause. This can be summarized as follows :
By application to the Florida Public Service Commission American Limousine Service Inc.-applicant sought a certificate of public convenience and necessity as a common motor carrier, authorizing transportation of passengers and their baggage between motels, hotels, tourist attractions, commercial airports, railroad depots, and intercity bus terminals and their facilities in an area including Orange and Seminole Counties, and that portion of Lake, Polk, and Osceola Counties as hereinafter referred to; on irregular routes and schedules; in vehicles of 17 passenger capacity or less, including the driver. Service of traffic originating at Herndon Airport and McCoy Jetport would be restricted to Cadillac Limousines of nine passenger capacity *107 or less, including the driver. Any vehicle could terminate service at these airports.
Under the authority requested, American proposed an on-call, radio dispatched, non-metered service on irregular routes and schedules; as the number of motels and traffic volume increases, a radio dispatched, “jitney type” service would be added, and vehicles would stop at motels as requested. Applicant would use the most direct route between stops rather than operate on a regular route. Bilingual drivers would be provided as requested and individual tickets would be sold. There would be no minimum number of fares or exclusive use of the vehicle and advance reservations would be used to enable an orderly routing of the vehicles, with additional pickups or diversions enroute passed to the vehicle by radio.
Hearings were held on the application on May 17, 18, 19 and August 29, 1972. Each of the petitioners, herein, appeared as a protestant of the application. As a result of the evidence received at the hearings, including the evidence submitted by the protestants, the Hearing Examiner concluded that public convenience and necessity warranted granting only that portion of the application seeking authority to transport passengers from motels and hotels in the described area on the one hand and tourist attractions on the other. In his recommended order, the Examiner stated, in part, as follows:
“The applicant was supported by fifteen public witnesses.”
and, the Hearing Examiner proceeded to detail the names and businesses of the fifteen persons and their reasons for issuance of the certificate of public convenience and necessity. The Hearing Examiner then determined:
“The public convenience and necessity required is not an absolute or strict necessity, but a reasonable necessity to meet a convenience of the public. Fleet Transport Co. v. Mason, [Fla.] 188 So.2d 294. Reasonable competition is in the public interest and should stimulate service and encourage aggressive internal cost reduction in operations to the benefit of the public. Order 9355, Docket 70449-CCT, Fred Womble; Order 7237-A, Docket 8333-CCT, Van Gorp Service, Inc., Affirmed [Fla.] 204 So.2d 730. The issue raised by the protestants in their motion for directed verdict that this Commission cannot grant authority for an operation such as is proposed herein was resolved against the protestants by the Florida Supreme Court in the case of Daytona Beach Limousine Service, Inc. v. Yarborough, Case #40,-818 [267 So.2d 11], decided July 26, 1972, Rehearing denied October 19, 1972.”
Exceptions to the Examiner’s recommended order were filed by petitioners, protestants below. Argument was heard by the Commission on the exceptions. By Order No. 10606, dated April 5, 1973, the Commission affirmed and adopted the findings and conclusions of the Hearing Examiner, denied protestant’s motion for directed verdict as being without merit, and granted American Limousine Service, Inc. Certificate No. 1121 authorizing the transportation of passengers and their baggage between motels, and hotels, on the one hand, and tourist attractions on the other, in an area including Orange and Seminole Counties; that portion of Lake County south of a line two miles north of and parallel to Route SO and east of a line parallel to and two miles west of U.S. 27; that portion of Polk County lying east of a line parallel to and two miles west of U.S. 27, within a four mile radius of the intersection of U.S. 27 and 1-4, and north of a line parallel to and two miles south of 1-4; and that portion of Osceola County lying north of an east-west line bordering the southern limits of the City of St. Cloud, on irregular routes and schedules in non-metered vehicles with a passenger capacity of more than nine but not over 17, including the driver.
*108 In response to protestants’ various exceptions and objectives, the Commission also stated:
“Protestants also contend that the Examiner erred in considering the applicant’s mini-shuttle operations in determining public convenience and necessity. Protestants maintain that the mini-shuttle operations were illegal and illegal operations can’t be considered as proof of public convenience and necessity. While the applicant has been ordered to Show Cause for certain practices in its mini-shuttle business, the Examiner did not consider the applicant’s mini-shuttle business in light of proof of public convenience and necessity. The mini-shuttle operation was only mentioned with respect to experience in the transportation field.” (Emphasis supplied.)
Of significant import on this issue is the protestants’ primary argument that there was no competent evidence to support the conclusion that public convenience and necessity warrants the grant of authority and that the Commission departed from the essential requirements of the law in permitting applicant to use evidence of a legally unauthorized operation to prove public convenience and necessity.
The record clearly establishes, supra, an incongruous and incredulous result. The Hearing Examiner entertained evidence from fifteen witnesses regarding the applicant’s use of “jitney type” or “mini-shuttle” vehicles in determining public convenience and necessity, whereas the Commission concluded that the Hearing Examiner did not consider such.
This squarely establishes the pivotal point as to whether inadmissible evidence and testimony were admitted and utilized in concluding public convenience and necessity existed.
Cutting to the core of this problem, the Hearing Examiner also found:
“The applicant owns Mini-Shuttle, Inc. (Mini-Shuttle), which holds six master taxi permits for the City of Bay Lake, and unincorporated territory in Seminole, Orange, Osceola, Polk and Lake Counties.”
“Mini-Shuttle is purchasing the existing vehicles and radio equipment in an installment contract; additional equipment will be provided.”
“The present vehicles and equipment operated by Mini-Shuttle will be available for the applicants use by nominal or no additional cost, and, additional vehicles can be leased, thus alleviating any large capital outlay to start operations.”
“The Operating officials have been operating Mini-Shuttle since January, 1972, therefore, the applicant has the necessary experience to render the proposed service.”
The record therefore reveals that the applicant intends to use the services and facilities of its wholly owned subsidiary corporation for transportation, while at the same time the subsidiary was then involved in providing transportation exceeding any permissible service that it could lawfully give under its master taxi permits. The officers and directors of the applicant and Mini-Shuttle, Inc. were the same. Is this imputable to the applicant? I believe it is.
Of the fifteen witnesses appearing for the applicant, eight were and had been using Mini-Shuttle, Inc. for a substantial time prior to the hearing sub judice. Indeed, numerous witnesses believed that Mini-Shuttle, Inc. was in fact the applicant. Three additional witnesses testified regarding traffic to and/or from the airport facilities, however, that portion of the application was denied. Of the remaining four witnesses, each had already been contacted and solicited by Mini-Shuttle, Inc. and in effect they supported that corporation in the proposed services sought by the applicant.
By separate docket, a part of this record, Mini-Shuttle, Inc. was found guilty by a *109 Hearing Examiner and the Commission of various violations above referenced.
In response, the respondent-applicant admits and states in its brief:
“Mini-Shuttle, Inc. was charged with (1) soliciting transportation by placing a sign in two lodging establishments, and (2) providing transportation for which it held no authority, pursuant to Section 323.05, Florida Statutes. The record is clear that the Respondent Mini-Shuttle admitted the acts committed but contended that no violations were made as a matter of law. This matter took place after the hearings on American’s application, at which time American stated that should its application be granted, it would no longer obtain Master For-Hire permits for a taxi cab operation. Consequently, subsequent to the issuance of its certificate, American, through no person or entity has operated a taxi cab service, nor does it hold any authority at this time to do so.”
While proclaiming sanctity, the applicant nevertheless admits to the intended use of its wholly owned subsidiary’s facilities, a corporation found to be in violation of existing law, rules and regulations. Accordingly, is the testimony of the fifteen witnesses supporting the applicant’s assertion of public convenience and necessity admissible when based upon prior service and experience by and with the applicant’s subsidiary ?
I cannot find this to be compatible, proper or acceptable under established standards.
The authoritative rationale of recent cases by our Court succinctly and clearly supports the conclusion that 1admission of past services of an illegal operation as proof of public convenience and necessity must be rejected where the applicant’s evidence is based thereon, or where all of the evidence is so related and entwined with such an illegal operation.
In Southern Armored Service, Inc. v. Mason, 167 So.2d 848 (Fla.1964), this Court stated:
“We are forced to the conclusion that Order No. 5397 was issued in violation of the applicable statutes, that the Commission did not have the authority to issue it under these circumstances, and therefore it was void when issued.
“In view of this conclusion we think it was error for the Commission to receive and consider as proof of public convenience and necessity evidence of Armored Express’ operation under Order No. 5397.” Id at 850. (Emphasis supplied.)
and again at page 851, we stated:
“It seems to us that to allow proof of public convenience and necessity to be made by evidence of a legally unauthorized operation would defeat the obvious purpose of the statute which is to prevent such operations. It would reward rather than penalize such unauthorized conduct.”
In Camp Lumber Co. v. Yarborough, 262 So.2d 649 (Fla.1972), our Court again enunciated the rule that when all of the evidence was so related and entwined with the illegal operation it was inadmissible to establish public convenience and necessity.
We must be bound by and adhere to the principles of our Court’s pronouncements. To do otherwise, would only result in compromising our own standards.
No independent evidence, unrelated to prior service and not so entwined and related to the subsidiary’s ostensible illegal activities, was introduced to justify a conclusion of public convenience and necessity for its parent applicant.
Therefore, the petition should have been denied. The applicant stands on an indefensible position on this issue. Otherwise, the Avernus result alluded to above will have arrived.
*110 Protestants’ remaining objections, even though of merit, need not be further pursued in this dissent.
For the reasons set forth above, I would quash the Orders of the Commission and remand this cause for entry of an Order denying applicant’s petition.