316 So.2d 257 (1975)
TAMIAMI TRAIL TOURS, INC., D/B/a Tamiami Trailways, et al., Petitioners,
v.
William H. BEVIS et al., Respondents.
No. 46778.
Supreme Court of Florida.
July 30, 1975.
Gregory A. Presnell of Akerman, Senterfitt, Eidson & Wharton, Orlando, for Tamiami Trail Tours, Inc.
Ansley Watson, Jr., of MacFarlane, Ferguson, Allison & Kelly, Tampa, for Gulf Coast Motor Line, Inc.
John H. Wilbur, Jacksonville, for Greyhound Lines, Inc., and Greyhound Lines-East Division.
Prentice P. Pruitt, Legal Director and J.B. Curasi, Staff Counsel, Tallahassee, for Fla.Public Service Commission, respondents.
James W. Crabtree and Linwood Anderson of Smathers & Thompson, Miami, for Gray Line Sightseeing Tours, Inc., intervenor.
SUNDBERG, Justice.
By petition for writ of certiorari, Tamiami Trial Tours, Inc., Gulf Motor Line, Inc. and Greyhound Lines, Inc., seek review of Florida Public Service Commission Orders No. 11495 and 11826, through which the Commission denied authorization to extend their operations to include transportation of passengers over irregular routes, in "special operations" throughout *258 the State of Florida. Our jurisdiction is provided for under Article V, Section 3(b)(3), Florida Constitution, West's F.S.A. We find that the writ should issue.
By applications separately filed with the Commission, Tamiami Trail Tours, Inc., Gulf Coast Motor Line, Inc., and Greyhound Lines, Inc., sought extensions of their respective certificates so as to authorize the transportation of passengers and their luggage, over irregular routes, in special operations, providing round-trip package tours to all points within the state. The term "package tour" as contemplated by petitioners would mean round-trip transportation to tourist and sightseeing attractions, sporting events and historical or cultural events computed at the rate per passenger mile authorized by the Florida Public Service Commission and, in addition, additional fees, accommodation charges and such other charges as may be applicable to the individual passengers.
These applications were consolidated and public hearings held. At the hearings, A-1 Bus Lines, Inc. and Gray Line Sightseeing Tours, Inc., appeared as protestants in opposition to the authority sought. However, both subsequently filed their own applications for "special operations" authority. The Gray Line application and the application of A-1 Bus Lines, Inc., were consolidated and public hearing was held.
On February 8, 1974, the Examiners who heard both consolidated proceedings entered a joint recommendation of denial finding that "[i]n effect, the applications are a direct attack on the commission's sightseeing Rule 25-5.45 with the carriers seeking `blank check' approval for anything and everything they want to do." The Examiners further concluded that the method of accomplishing the objective sought by the applicants should not be by the grant of the applications but rather by rule amendment.
All five applicants filed Exceptions to the Examiners' recommendation, contending, in essence, that the applications should be granted as a matter of law and that it was legally improper to attempt a conversion of the franchise applications into a rule docket for general application.
Oral argument upon the exceptions was heard and by Order No. 11495, the Commission denied all five applications, after concluding that the Commission is without power to grant these applications under the current law and Commission rules and that the grant of this authority would adversely affect the public transportation facilities and transportation as a whole in the territory involved.
Thereafter, petitioners and the other two applicants filed petitions for reconsideration contending that the Commission had in the past issued similar authority to other carriers and could not now deny its authority to do so in the instant proceedings.
Following oral argument, the Commission entered its Order No. 11826 denying the petitions for reconsideration on the grounds that "... Chapter 323 does not appear to specifically authorize this type of transportation, nor do the Commission Rules promulgated thereunder provide for such transportation."
Petitioners thereafter filed their petition for writ of certiorari which seeks to review Orders No. 11826 and No. 11495.
At the conclusion of its administrative processes, the Commission concluded that it was without authority under statute or rule to grant an application for "special operations" and in its Order Denying Petition for Reconsideration stated "... that a more equitable and efficient means of obtaining the end sought by applicants herein would be via a rule-making proceeding." With these conclusions we disagree.
The Commission's contention that the proceeding should be made the subject of rule-making proceedings under the Administrative Procedures Act, Ch. 74-310, Laws of Florida, misses the mark in two particulars. *259 First, these applications were commenced prior to the effective date of Ch. 74-310 (January 1, 1975) which provides for initiation of the adoption, amendment or repeal of an agency rule by any person regulated thereby. Section 1, Ch. 74-310, Laws of Florida. Second, implicit in the direction to proceed through rule making is the concession that the Commission has jurisdiction and power to act under existing statutory authority. The insistence by the Commission that it may act only through rule-making procedures in this instance strikes one as being almost peevish.
The Commission has authority under Section 323.03, Florida Statutes, to grant to "motor carriers" certificates of public convenience and necessity when the essential elements therein set forth appear. Although the statutes pertaining to the Public Service Commission do not define "common carrier" or "common carriage", subsection (7) of Section 323.01, Florida Statutes, defines "motor carrier" as follows:
"(7) Motor carrier means all persons, their lessees, trustees or receivers, owning, controlling, operating, or managing any motor propelled vehicle not usually operated on or over fixed rails, used in the business of transporting persons or property for compensation over any public highway in this state and shall specifically include:
"(a) Every such person owning, leasing, using or exercising dominion over motor vehicles operated in common carriage of either persons or property for compensation over public highways over regular routes or on fixed schedules or between fixed termini or in charter carriage as herein defined."
Section 323.02, Florida Statutes, provides that no "motor carrier" shall operate any motor vehicle for transportation of persons or property as a "common carrier" without obtaining from the Public Service Commission a certificate of convenience and necessity. Section 323.03, Florida Statutes, provides that no "motor carrier" shall operate as a "common carrier" without obtaining a certificate of convenience and necessity and then sets out the application procedure for such authority. It appears clear, therefore, that the term "common carrier" is more narrow than the term "motor carrier", the latter including the former. Subsection 323.03(1)(b), Florida Statutes, relating to an application for a certificate of convenience and necessity for "common carriage" made by any "motor carrier" requires the applicant to specify:
"(b) The public highway or highways over which, and the fixed termini or the regular route, if any between which or over which appicant desires to operate." (Emphasis supplied)
Subsection 323.03(4)(b), Florida Statutes, dealing with the contents of any certificate of convenience and necessity for "common carriage" provides that such certificates shall contain, among other things:
"(b) The public highway or highways over which, and the fixed termini, if any, between which the grantee is permitted to operate." (Emphasis supplied)
Clearly, then, the Commission has statutory authority to regulate all "motor carriers" and the term "common carrier" or "common carriage" is not limited to the definition of regular common carrier of passengers contained in Commission Rule 25-5.43.
The Commission concedes that the Interstate Commerce Commission recognizes certification of "special operations" authority where flexibility is desirable. See Greyhound Lines, Inc., et al.; Extension-Special Operations, 120 MCC 629 (Nov. 20, 1974). Counsel for the Commission, however, states that recognition of such authority by the Interstate Commerce Commission does not make a case for recognition of such authority by the Florida Public Service Commission. The result, however, is that residents of Thomasville, *260 Georgia, may be transported by petitioners to any point in Florida under its interstate commerce "special operations" authority, whereas residents of Tallahassee, Florida, may not. The Commission contends that, in fact, applicants are simply making a collateral attack upon Commission Rule 25-5.45, as it relates to "sightseeing" authority. A review of the briefs and record, however, makes it apparent that petitioners do not seek authority under Rule 25-5.45 because it specifically limits "sightseeing" authority to transportation of passengers and baggage "over a specified route". It is a more flexible scheme of operations which applicants seek, transcending the authority promulgated in the respondent's "sightseeing" rule and there are no sound arguments presented by the Commission why it does not have the authority to certificate the "special operations" contended for if the applications meet the criteria of Section 323.03, Florida Statutes, which are basically:
(1) Need for the service;
(2) No adverse effect upon transportation facilities in the territory sought to be served or upon transportation as a whole within said territory (in this case, the entire state of Florida);
(3) Existing certificated carriers are not providing a reasonably adequate service.
Respondents contend that even if the Commission has statutory authority to grant the proposed "special operations" authority sought by petitioners "... to do so would adversely affect the public transportation facilities and transportation as a whole in the territory involved." Order No. 11495. Although there was limited testimony in the record with respect to adverse effect on competing facilities in the territory, counsel for the respondents admits that this is not the adverse effect referred to in Order No. 11495. Our reading of the record reflects that even if such concession were not made, the evidence referred to would not support a finding of adverse effect. Respondents maintain that the adverse effect referred to in Order No. 11495 is an adverse effect upon transportation as a whole in the State of Florida. Counsel for respondents admits that there is no competent substantial evidence to support the conclusion that transportation as a whole in the territory involved would be adversely affected but asserts that the Commission may take judicial notice of such effect. We reject out of hand any inherent right in the Commission to base such a conclusion on judicial notice for so to do effectively would be to deprive this Court of its constitutional duty to review actions of the Commission. See Schreiber Express, Inc. v. Yarborough, 257 So.2d 245 (Fla. 1971), and Greyhound Corp. v. Carter, 124 So.2d 9 (Fla. 1960).
Petitioners assert that the Commission has heretofore issued "special operations" authority to other bus companies citing Wylly's Sportsman, Inc., Docket No. 8710-ccb, Order No. 7605, June 1967; Turfway Lines, Inc., Docket No. 8621-ccb, Order No. 7626, July 1967; Superior Student Transport, Docket No. 9119-ccb, Order No. 8418, April 1969; and Hartman Transportation, Inc., d/b/a Central Florida Bus Lines, Docket No. 72139-ccb, Order No. 10541, February 1973. The respondents refute this by asserting that such grants of authority were grants of authority for specialized service to a limited destination. Our review of the grants does not persuade us to respondents' position. For example, in the Hartman application authority for "... transportation of passengers, in special operations, from Orange and Brevard Counties, to cultural and sporting events throughout Florida ..." was applied for and granted. The instant applications "... seek authority for the transportation of passengers and their baggage over irregular routes and on irregular schedules in round trip transportation from points on their certificated routes to tourist and sightseeing attractions, sporting events and historical or cultural *261 events anywhere in the state of Florida". See Order No. 11495. If there be a distinction between the Hartman application and the instant applications it is a "distinction without a difference".
We hold that the Commission has statutory authority under Ch. 323, Florida Statutes, to entertain the applications of petitioners and based on the record before this Court the criteria of Section 323.03, Florida Statutes, have been satisfied and, therefore, the authority requested should be granted. Regulation of "special operations" authority such as extended to the petitioners herein can be quite properly the subject of rules promulgated by the Commission hereafter pursuant to the provisions of Ch. 74-310, Laws of Florida. Accordingly, writ of certiorari is granted and the orders of the Commission herein reviewed are quashed with direction to proceed in a manner consistent with this opinion.
ADKINS, C.J., and ROBERTS, OVERTON and ENGLAND, JJ., concur.