**Application of ANCHOR MOBILE HOME MOVERS, Inc.**
Docket No. 69258-CCT, Order No. 8697.
Florida Public Service Commission.
December 18, 1969.

B. Kenneth Gatlin, Tallahassee, for the applicant.

Edwin L. Mason, Tallahassee, for Morgan Drive Away of Florida, Inc., protestant.

John A. Sutton, Orlando, for Transit Homes, Inc. and National Trailer Convoy, Inc., protestants.

W. E. Bishop, Lake City, for Interstate Mobile Home Towing of Jacksonville and Brown's Mobile Home Towing, protestants.

Chairman WILLIAM T. MAYO and Commissioners JERRY W. CARTER and JESS YARBOROUGH participated in the disposition of this matter.

## BY THE COMMISSION.

Pursuant to notice the commission by its duly designated examiner, Leon F. Olmstead, held public hearings on this matter in Lake City on June 11, 12, 25, 26 and 27, 1969.

The examiner's report and recommended order was duly served on all of the parties. Exceptions to the recommended order were filed with the commission. Oral argument was heard on the exceptions on December 9, 1969. The entire record herein, including the application, the testimony adduced at the public hearing, the exceptions to the recommended order and oral argument heard thereon, has been examined by the full commission. After due consideration, the commission now enters its order in this cause.

By this application Anchor Mobile Home Movers, Inc., P. O. Box 950, Lake City, Florida 32055, is seeking authority to transport mobile homes between points in 19 counties in peninsular Florida,

lying east of Jefferson and Taylor counties and north of the southern boundary lines of Levy, Marion and Flagler counties. Protestants to this application are the three largest interstate and intrastate mobile home movers with their principal places of business in Oklahoma, Indiana, and South Carolina, and two smaller intrastate operators: Brown, who is limited to Putnam County, and Interstate, which has non-radial authority in Duval, Clay, St. Johns, Putnam and Alachua counties.

During the course of the hearing, protestants sought to inspect and use certain corporate records of applicant company brought to the hearing by applicant pursuant to a subpoena duces tecum issued by the administrative secretary of this commission. Upon objection of applicant's attorney that such records were not relevant or material the examiner sustained the objection and denied protestants the right to inspect and use these records. This had the effect of quashing the subpoena pursuant to the provisions of Rule 310-2.86.

Protestants sought an interlocutory review of this ruling but a review of the merits of the examiner's ruling has been deferred by order nos. 8576 and 8640, entered on September 12, 1969, and October 29, 1969, respectively, on the grounds that it is not commission policy to review each specific ruling of a hearing examiner made during the course of a hearing prior to exceptions being filed. The question now presented is whether the examiner correctly quashed the subpoena pursuant to applicable law. We are of the opinion he did. In Pembroke Park Lanes, Inc. v. High Ridge Water Co., 186 So.2d 85 (Fla. 1966), the 3rd District Court of Appeal held that Florida Rules of Civil Procedure 1.28 (discovery and production) and 1.34 (subpoena duces tecum) should be considered in pari materia. Accordingly, a moving party must demonstrate relevancy, good cause, and designation in order to withstand a motion to quash a subpoena duces tecum.

Protestants have stated essentially that they need to inspect such records for the purpose of assisting in the preparation of their case and to prepare for cross-examination. This is not in itself good cause as defined by the courts in numerous cases. For this reason alone, a motion to quash the subpoena should be granted. Further, as the examiner determined in his broad discretion, these records were not relevant to the proceeding and we find no compelling reason to disturb this finding. Protestants further contend that City of Miami v. Florida Public Service Commission, 226 So.2d 47 (Fla. 1969), sustains their position in that they are not interfering with the company's business activities and that the records are adequately designated. While the above may be partially correct,

that case still sustains the general rule of law that all three criteria must be met, and as discussed hereinabove, the protestants have failed to demonstrate good cause and relevancy. Accordingly, this contention has no merit and the examiner's ruling should be affirmed.

The applicant's president has been moving mobile homes for about 15 years, having worked at various times for each of the three statewide mover-protestants. Since he will be the operating official the applicant is considered qualified by experience to perform the proposed transportation. The applicant has equipment and resources on hand and available, including tow trucks and a terminal site in Lake City. Like the protestants it can resort to leased-operator owned vehicles if necessary so the existing financial resources are considered sufficient to conclude that the applicant is able to conduct the proposed transportation.

In support of the application, 15 witnesses were presented, consisting of 2 manufacturers of mobile homes, 3 dealers in mobile homes and 4 park operators all in the Lake City area as well as 3 mobile home owners and 2 parties who move mobile homes from outside the Lake City area.

The manufacturers move 85-90% of their homes with their own equipment, however, they use common carriers for the overflow and for economic reasons prefer them for the shorter moves. The dealers likewise move most of their units with their own equipment but need the common carriers for the overflow. Both ship to and from the 19 county area herein requested. The park operators have moves intra park as well as in and out of their parks. New units are moved by the dealer but thereafter the park operators and their tenants are dependent on the common carriers. Park operators are occasionally asked to obtain a carrier for a tenant and try to do so as an accommodation, frequently such accommodation is necessary to get the tenant to move into their park. These moves are mostly within about 25 miles of Lake City though some extend into Suwannee and Hamilton counties. Without exception, all of the foregoing witnesses stated that when they could get a carrier the move was satisfactory, but they were unable to obtain service when it was needed.

Of the mobile home owners, one arranged with Morgan's agent in Lake City to move his coach from White Springs to near Gainesville, setting the hour and date for the move. When the tow vehicle did not show at the appointed time he made inquiry and found out it had broken down. Because he had to move that day, he borrowed a truck and hired a driver and moved himself. Another tried to contact Morgan's Lake City terminal agent for

an intra park move at White Springs and couldn't, so had to abandon the plan for the time, but is moving to Lake City in the near future. While this testimony involves a proposed municipally exempt move (assuming the city of White Springs regulates motor carriers), it relates to the overall difficulty of mobile home movers to secure prompt and adequate service. The other was moving from Archer to Ocala and wanted immediate service. He called Morgan in Ocala and was advised that there were no vehicles in then but that some were expected soon. He then called National in Ocala with the same result. He then called Transit; they promised to move him in a couple of days. He contracted for the move with Transit and was in fact moved four days later. One witness in the house moving business in Cross City, Dixie County, moves mobile homes in the area as a "favor" when the owners cannot get anyone else to do it. He could not say how many he had moved.

On cross-examination the applicant's president corroborated testimony of shippers that while he was employed by Morgan, he received transportation requests that he was unable to obtain vehicles to meet, from either Morgan, National, or Transit, and that he had loaned his truck or moved mobile homes as favors for people unable to get service otherwise.

Protestants made a motion for a directed verdict against the applicant which was denied by the examiner. After reviewing the record we affirm the ruling and the motion for a directed verdict is denied. Protestants also made a motion to dismiss the application on the grounds that applicant had failed to comply with commission rules pertaining to the filing of applications. After considering the motion we find it has no merit and should be denied.

All protestants presented evidence as to their authority and operations. The three statewide carriers also presented evidence as to their advertising, training, safety, dispatch, and solicitation programs. They denied ever being unable to furnish a vehicle within 12 to 24 hours of the time it was requested, occasionally giving same day service.

One common difficulty was that no records were maintained by any of the carriers reflecting requests for service which could not be met, or where service was delayed, leaving information relative thereto to the recollection of the individual witnesses. A careful review of the testimony indicates to the commission that there are delays in furnishing service by protestants, especially in view of the number of complaints by the applicant's witnesses.

The applicant failed to show a need for additional transportation facilities for non-radial moves in the area covered by the certifi-

cates of protestants Interstate and Brown, so their interest will not be affected by disposition hereof. The testimony as to the need for non-radial moves in Dixie County (Cross City) was too vague and indefinite to have substantial probative value.

Of the three statewide-carrier-protestants, only Morgan has a terminal in Lake City with one truck domiciled there, however, because of difficulties in contacting him it appears that he is of little value to the shipping public. Transit and National's nearest terminals are in Jacksonville and Gainesville, respectively. Many witnesses appeared reluctant to call long distance for local moves, athough some had tried. Apparently they either prefer to use a local carrier or feel it will cost more to deal with the distant carrier's office. Protestants' witnesses did call for and obtained satisfactory service from Jacksonville or Gainesville. The solicitation in the advertising to call the national headquarters of the respective carriers was apparently never considered. One witness in fact, responded to a question about calling Tulsa, Oklahoma, by asking why she should call there for a short move here.

Public convenience and necessity which must be shown is not an absolute or strict necessity. All that is required is a reasonable necessity to meet a convenience of the public. The needs of the shipper are the criteria. Fleet Transport Company of Florida v. Mason, 188 So.2d 294 (Fla. 1966). Mere transportation is not sufficient; the shipper is entitled to movement without any reasonably avoidable delay. Atlantic Coast Line Railway v. Railroad Commission, 5 So.2d 708 (Fla. 1942). This commission and the Florida Supreme Court have recognized that a lesser degree of proof is required in this type of case because of the difficulty in obtaining dissatisfied witnesses. National Trailer Convoy v. Mason, 195 So.2d 551 (Fla. 1966). See also order 8106 in docket no. 8536-CCT. The record is quite clear that the existing carriers have been unable to provide service consistently on the days specified by those seeking to utilize their service. In this respect the case here is analogous to the situation in docket no. 7963-CCT, order no. 7225, involving the application of Harold G. Sparks, d/b/a Interstate Mobile Home Towing.

The facts herein show a transportation need and a "community of interest" like that found in order no. 8449, docket no. 9893-CCT, Dan Boone Moving and Storage, insofar as an additional mobile home transporter is concerned to transport mobile homes and accessories non-radially in the 5 counties of Hamilton, Columbia, Suwannee, Union and Baker and radially between the 5 foregoing counties and the balance of the 19 counties requested.

From the foregoing, the commission concludes that the applicant has shown that public convenience and necessity require the grant of the application as provided in the first ordering paragraph herein-below; and that the grant of this authority will not adversely affect the transportation facilities and transportation in the territory involved.

It is therefore ordered that the application of Anchor Mobile Home Movers, Inc., P. O. Box 850, Lake City, Florida 32055, for a certificate of public convenience and necessity be granted and that certificate of public convenience and necessity no. 1019 be granted so as to authorize the transportation of mobile homes and accessories by the tow-away method over irregular routes between all points and places in the counties of Hamilton, Columbia, Suwannee, Union and Baker; and, between those 5 counties on the one hand, and on the other, the counties of Madison, Lafayette, Dixie, Gilchrist, Nassau, Duval, Clay, St. Johns, Putnam, Alachua, Levy, Marion, Flagler, and Bradford.

It is further ordered that the application be denied in all other respects.

It is further ordered that this authority be held in abeyance pending the applicant's compliance with this commission's rules pertaining to mobile home carriers.

It is further ordered that protestants' motion to dismiss the application is denied.